[No. 53550–7.   En Banc.   October 8, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. KERRY S. THOMAS, *Petitioner.*

*Christine Wyatt,* for petitioner.

*C. Danny Clem, Prosecuting Attorney,* and *Reinhold P. Schuetz, Deputy,* for respondent.

GOODLOE, J.—This case involves an allegation of ineffective assistance of counsel. Petitioner Kerry Thomas alleges that her assigned trial counsel failed to competently present a diminished capacity defense based on voluntary intoxication to a charge of attempting to elude a police vehicle. We agree and remand for a new trial.

On October 15, 1984, defendant Thomas imbibed numerous alcoholic drinks at the Blue Goose Tavern, in Kitsap County. The barmaid, Hurleen Fridline, remembers serving Thomas about five glasses of wine. Around 11 p.m., Fridline cut Thomas off because she felt Thomas had consumed too much. Soon thereafter, Thomas started getting rowdy and Fridline asked her to leave. After leaving the Blue Goose, Thomas remembers going to the Port Orchard Tavern. At approximately 2 a.m., Thomas returned to the Blue Goose in her car. Because of her drunken behavior and erratic driving Fridline called the police. Deputy Wayne Gulla of the Kitsap County Sheriff's Office responded. Meanwhile, Thomas had driven away.

Gulla pursued Thomas in the direction her yellow car had last been seen. Shortly after beginning pursuit, he observed fresh skid marks that passed through a cyclone fence. After briefly stopping he proceeded onward. At a grocery store he contacted Deputy John Sandberg, who had also responded to that location. While talking, Gulla noticed the headlights of a car up the road which "made a bounce as if the vehicle was run into the ditch or was pulling out of the ditch." Report of Proceedings, at 91. Gulla

headed in the direction in which the headlights were observed. He testified that as he approached the car, which was yellow, it was necessary to take evasive action to avoid a head–on collision. In so doing, Gulla took a right turn. The yellow car followed and began closely tailgating Gulla's patrol car. His patrol car was equipped with shields, spot-light, push bars, "wigwag" headlights, siren, and strobe lights in the grill, but did not have markings on it indicating that it was a police vehicle.

To evade the car that was tailgating him, Gulla made an abrupt right turn. He then made a U–turn and pulled out behind it. At this point Deputy Sandberg came up behind him in a fully marked Kitsap County Sheriff deputy car. Gulla and Sandberg proceeded to pursue the yellow car. Gulla stated that he was no more than two car lengths behind the pursued car. He activated the patrol car's "wig-wag" headlights, red and blue strobe lights, and siren. He testified that the car being chased responded by accelerating and that it weaved all over the road.

The chase continued through a series of curves, following which the yellow car made a left–hand turn. Gulla testified:

> At that point I angled my patrol vehicle right into the driver's door of the fleeing vehicle, blasting the siren right in the window. The driver of the vehicle, which I observed at that time to be a female, looked toward my patrol vehicle, and throughout the course of the events had been watching my actions in her rear–view mirror.

Report of Proceedings, at 98. Gulla testified that coming out of the left–hand turn, the pursued car again accelerated. During all of this, Sandberg had all of his emergency lights and his siren on.

Finally, the chased car turned down a dead–end street. After the car reached the end the driver made a U–turn. The driver headed toward Sandberg's marked vehicle which he had positioned to block the road. However, she then stopped. Thereafter, Thomas was taken into custody. Gulla concluded that she was very intoxicated. Sandberg testified that he pursued Thomas for a mile to a mile and a half.

Thomas testified that she does not remember returning to the Blue Goose Tavern. She stated:

I had a blackout. I have had blackouts before, and a lot of times I'll come in and out of it. If something really terrible happens, I have been known to black it all out so that I don't have to deal with it.

Report of Proceedings, at 167–68. She testified that she does not recall driving through the cyclone fence. Thomas also testified that she stopped as soon as she realized a police vehicle was following her. She stated that she does not recall hearing any sirens. Thomas said that she only remembers seeing bright white lights, but did not think it was the police because their lights are blue and red. She testified that she was "blitzed" and incoherent.

The Kitsap County Prosecutor charged Thomas with attempting to elude a pursuing police vehicle in violation of RCW 46.61.024 and driving while under influence of intoxicating liquor or drug in violation of RCW 46.61.502. Thomas pleaded guilty to the DWI charge. The attempting to elude charge went to trial. A jury found Thomas guilty. The Court of Appeals affirmed. *State v. Thomas,* 46 Wn. App. 723, 732 P.2d 171 (1987). This court accepted discretionary review.

Thomas' assignments of error involve an allegation of ineffective assistance of counsel. The purpose of the requirement of effective assistance of counsel is to ensure a fair and impartial trial. *See, e.g., State v. Osborne,* 102 Wn.2d 87, 99, 684 P.2d 683 (1984); *State v. Ermert,* 94 Wn.2d 839, 849, 621 P.2d 121 (1980). To that end Justice O'Connor articulated the following 2–prong test in *Strickland v. Washington,* 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984):

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as

to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*See also State v. Jeffries,* 105 Wn.2d 398, 418, 717 P.2d 722, *cert. denied,* 93 L. Ed. 2d 301 (1986); *State v. Sardinia,* 42 Wn. App. 533, 713 P.2d 122 (1986).

The *Strickland* test requires a showing that counsel's representation fell below an objective standard of reasonableness based on consideration of all of the circumstances. *Strickland,* at 688. Regarding the first prong, scrutiny of counsel's performance is highly deferential and courts will indulge in a strong presumption of reasonableness. *See Strickland,* at 689. To meet the requirement of the second prong defendant has the burden to show that

there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *A reasonable probability is a probability sufficient to undermine confidence in the outcome.*

(Italics ours.) *Strickland,* at 694. Defendant, however, "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland,* at 693.

In the present case, the claim of ineffective assistance of counsel relates to defense counsel's alleged failure to properly present a diminished capacity defense based on voluntary intoxication. Thomas' first allegation of ineffective assistance of counsel involves her trial counsel's failure to offer an instruction based on our construal of the felony flight statute, RCW 46.61.024, in *State v. Sherman,* 98 Wn.2d 53, 653 P.2d 612 (1982).

RCW 46.61.024 defines felony flight in the following terms:

Any driver of a motor vehicle who wilfully fails or refuses to immediately bring his vehicle to a stop and who drives his vehicle in a manner indicating a wanton or wilful disregard for the lives or property of others while attempting to elude a pursuing police vehicle, after being

given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony.

In *Sherman,* we held that RCW 46.61.024 requires that the defendant both subjectively and objectively act with wanton and willful disregard of others. We concluded that juries should be instructed that the circumstantial evidence of defendant's manner of driving only creates a rebuttable inference of "'wanton and wilful disregard for the lives or property of others . . .'" *Sherman,* at 59. Therefore, *Sherman* indicates that objective conduct by the defendant indicating disregard is only circumstantial evidence and may be rebutted by subjective evidence pertaining to defendant's mental state.

■ The defense theory of the case was that Thomas was too intoxicated to have formulated the required wanton or willful disregard. Therefore, she argues that a *Sherman* instruction was crucial because she presented evidence, her intoxication, to rebut the inference of wanton and willful disregard created by her driving. Thomas asserts that a *Sherman* instruction would have better enabled her counsel to argue the defense's theory of the case. The Court of Appeals disagreed and held that the failure to offer a *Sherman* instruction was not prejudicial because no evidence existed to rebut the inference. *Thomas,* at 727. The court reasoned that a *Sherman* instruction is necessary only if defendant presents an affirmative showing of a noncriminal or innocent mental state, *e.g.,* stuck throttle, rather than having "no mental state at all." *Thomas,* at 728. Thomas responds that voluntary intoxication is a defense encompassed by the reasoning of *Sherman* and that an attorney of reasonable competence would not have failed to offer the instruction mandated by *Sherman.* We agree with Thomas.

*State v. Coates,* 107 Wn.2d 882, 889, 735 P.2d 64 (1987) provides: "[E]vidence of voluntary intoxication is relevant to the trier of fact in determining in the first instance whether the defendant acted with a particular degree of mental culpability." Furthermore, in *State v. Parker,* 102 Wn.2d 161, 683 P.2d 189 (1984), the defendant was also

charged with eluding a police vehicle in violation of RCW 46.61.024. The issue in *Parker* involved the necessity of giving an instruction on the lesser included offense of reckless driving. The court stated:

> The evidence in the case supports an inference that the lesser crime was committed. There was substantial evidence that the defendant was intoxicated at the time of the alleged offense and the trial court so instructed. At the time of arrest and at trial, defendant was unable to remember the chase through the streets of Seattle. The jury could have found that the defendant was not so intoxicated as to act without "wilful and wanton disregard", but intoxicated to a degree preventing knowledge that he was eluding a pursuing police vehicle.

*Parker,* at 165–66. The clear import of *Coates* and *Parker,* together with *Sherman,* is that voluntary intoxication can be an exculpatory factor to a charge of violating RCW 46.61.024.

Defendant is entitled to a correct statement of the law and should not have to convince the jury what the law is. *State v. Acosta,* 101 Wn.2d 612, 621–22, 683 P.2d 1069 (1984). Here, defendant's proposed "to convict" instruction did not indicate that there is a subjective component to RCW 46.61.024, nor did any other instruction offered by the defense. Furthermore, the record does not contain a proposed defense instruction on the relevance of intoxication as to the mental element of the crime charged. The lack of a *Sherman* instruction allowed the prosecutor to argue that Thomas' drunkenness caused her mental state. In contrast, defense counsel argued that Thomas' drunkenness negated any guilty mental state. Therefore, in closing argument, opposing counsel argued conflicting rules of law to the jury. *See Acosta,* at 621–22. Accordingly, we conclude that in failing to offer a *Sherman* instruction, defense counsel's performance was deficient.

We must still ascertain whether the deficient performance was so serious as to deprive Thomas of a fair trial. *Strickland,* at 687. Trial counsel does not guarantee a successful verdict, *State v. Adams,* 91 Wn.2d 86, 91, 586 P.2d

1168 (1978), and competency is not measured by the result. *State v. White,* 81 Wn.2d 223, 225, 500 P.2d 1242 (1972). Nevertheless, it must be remembered that the right to effective assistance of counsel constitutionally guaranteed by the Sixth Amendment and Const. art. 1, § 22 (amend. 10) extends to *all* defendants.

In the present case, whether trial counsel's deficient performance prejudiced Thomas is a close issue. On the one hand, her driving objectively indicated the required wanton or willful disregard. On the other hand, the record indicates that Thomas was extremely intoxicated. Given a *Sherman* instruction, the jury may have determined that her extreme intoxication negated the required wantonness or willfulness. Without the *Sherman* instruction the jury may well have thought that the objective indication of wanton or willful disregard created by her driving established Thomas' guilt and, therefore, the jury may never have considered the subjective component of RCW 46.61.024. Thus, we believe a proper instruction on the subjective component of RCW 46.61.024 was crucial. Accordingly, our confidence in the outcome is undermined such that we cannot say Thomas received effective assistance of counsel. *See Strickland,* at 694. A reasonably competent attorney would have been sufficiently aware of relevant legal principles to enable him or her to propose an instruction based on pertinent cases. *See generally Kemp v. Leggett,* 635 F.2d 453, 454 (5th Cir. 1981). We hold that counsel's deficient performance deprived Thomas of a fair trial. Our conclusion is further supported by Thomas' second argument.

Thomas' second allegation of error involves her counsel's failure to ascertain that Pamela Hammond, called on to testify by defense counsel as an "expert" witness, was only an alcohol counselor trainee. Because of Hammond's lack of qualifications the trial court refused to allow her to testify as an expert. No other expert was called. Thomas asserts that her counsel's failure to ascertain Hammond's lack of qualifications cannot be dismissed as a trial tactic upon which attorneys frequently differ or disagree. *See Adams,*

at 90. She argues that once defense counsel determined that an expert was needed, any reasonably competent counsel would have ascertained the proposed expert's qualifications or lack thereof. Thomas further argues that expert testimony on blackouts would have been helpful and, therefore, she alleges she was prejudiced by her counsel's ineffective assistance.

The Court of Appeals rejected this argument, holding that the "collective experience of a jury is sufficient to apprise the jurors of the effects of drunkenness." *Thomas,* at 727. The court reasoned defendant neither showed that there was any available expert whose testimony could have helped nor that any expert testimony would have helped. *Thomas,* at 727. We disagree.

■ Generally, the decision to call a witness will not support a claim of ineffective assistance of counsel. *State v. Wilson,* 29 Wn. App. 895, 903 (1981); *State v. Thomas,* 71 Wn.2d 470, 472, 429 P.2d 231 (1967). However, the presumption of counsel's competence can be overcome by a showing, among other things, that counsel failed to conduct appropriate investigations. *State v. Jury,* 19 Wn. App. 256, 263, 576 P.2d 1302 (1978). In the present case, in failing to discover the alcohol counselor trainee's total lack of qualifications, trial counsel's performance was deficient. Had he conducted *any* investigation into Hammond's qualifications he would have discovered she was only a trainee with minimal experience. Our conclusion is demonstrated by defense counsel's questioning of the expert he called during voir dire, wherein defense counsel elicited the following:

> THE COURT: Do you have any further questions of the witness on this subject? [DEFENSE COUNSEL]: Yes, Your Honor. THE COURT: Qualifications? [DEFENSE COUNSEL]: Yes, Your Honor. Q (By Defense Counsel) Have you, on your own, read any treatises or books on the chemical effect of alcoholism on the brain? A No. Q And have you taken any classes last semester relating to the effect of alcohol on the assimilation of information? A Well, yes. But that wasn't the main topic of the class. But that was also included. Q That was included in the class? A

Assimilation of information. Q And at what institution was that? A That was at Fort Steilacoom Community College. Q And you have been counseling—Strike that— To do your present position need you know what the effect of alcohol is in the brain and the assimilation of knowledge? A To be in my present position I need to be gaining in this information. In other words, I am required to be getting credits, formal credits, in the field that I can become a qualified alcohol counselor. However, that is a process that you go through when you begin. And another thing you need to get to become a qualified alcohol counselor is hours counseling, directly counseling in the field. So it's kind of a process. Q It's a combination? A It's a combination. You have to be working in the field in order to become qualified. So that's what I'm in the process of doing. [DEFENSE COUNSEL]: I have no further questions. [PROSECUTOR]: I have one other question, if I could, Your Honor. Q [By Prosecutor]: From what you have just said, do I take then you are not presently a— quote—qualified alcohol counselor, unquote? A By state criteria of qualified alcohol counselor, no, I'm an alcohol counselor trainee.

Report of Proceedings, at 163–64.

The foregoing demonstrates that defense counsel was unaware of his "expert's" lack of qualifications. We do not hold that every time the trial court determines an expert witness is not qualified that counsel's performance is thereby deficient. Indeed, such a trial court ruling generally provides no basis for an allegation of ineffective assistance of counsel. However, some minimal investigation into qualifications is required. *See Jury,* at 263. Here, the record reflects that no investigation was made and, therefore, defense counsel's performance was deficient.

Nonetheless, we still must determine whether Thomas was prejudiced by defense counsel's deficient performance. *State v. Jones,* 95 Wn.2d 616, 622–23, 628 P.2d 472 (1981) indicates that expert testimony is not absolutely necessary in order for a court to give an intoxication instruction. In *Jones,* defendant's testimony that he drank "nine or eleven" beers and eyewitness testimony describing defendant's intoxicated condition sufficed for the trial court to

give an intoxication instruction. *Jones,* at 622–23. However, *Jones* is not dispositive of the present case. Here, Thomas offered substantial lay testimony regarding her intoxicated condition and blackouts. Her testimony regarding blackouts was very damaging to her credibility because it suggested that there is a conscious component to her blackouts. The prosecutor attempted to capitalize on this testimony. Therefore, expert testimony explaining blackouts may have proved crucial to her defense. To hold as the Court of Appeals that "there simply is no showing that there was an expert who could have offered testimony helpful to Thomas" begs the question. *Thomas,* at 727. Arguably, many alcohol counselors could have testified, as defense counsel proposed, as to alcohol's effect on the brain and could have assisted the jury in explaining blackouts. *See* ER 702. Accordingly, we cannot say that trial counsel's deficiency in failing to discover his expert's lack of qualifications to explain blackouts and their effects did not prejudice Thomas. This reaffirms that our confidence in the outcome of Thomas' trial is undermined.

Based on all of the circumstances, we hold that defense counsel's representation fell below an objective standard of reasonableness. *See Strickland,* at 688. To hold otherwise would render the constitutional guaranty of effective assistance of counsel mere verbiage. We reverse and remand for a new trial.

PEARSON, C.J., and UTTER, BRACHTENBACH, and DORE, JJ., concur.

DOLLIVER, J. (dissenting)—The opinion of the Court of Appeals fully answers the majority in this case. Thus, rather than rewrite this excellent analysis, I simply quote from the relevant portion:

> To prevail on a claim of ineffective assistance of counsel, a defendant must show, first, that counsel's performance was deficient and, second, that defendant was prejudiced by the deficiency. *State v. Sardinia.* 42 Wn. App. 533, 713 P.2d 122, *review denied,* 105 Wn.2d 1013

(1986). The first element is met by a showing that counsel's performance fell below an objective standard of reasonableness; the second, by a showing that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different". *Sardinia,* 42 Wn. App. at 539. Thomas fails to meet these requirements.

As to the expert witness, we will assume arguendo that a lawyer who calls an expert witness is deficient in neglecting to ascertain the witness' qualifications: thus we assume that the first *Sardinia* element has been satisfied here. There is, however, no showing that it made any difference. First, there simply is no showing that there was an expert who could have offered testimony helpful to Thomas. We will not infer the existence of such a person from a silent record. Second, there is no showing that any expert testimony would have helped. The fact is that Thomas was drunk. Surely the collective experience of a jury is sufficient to apprise the jurors of the effects of drunkenness.

We also conclude that the trial court would have committed no prejudicial error in refusing a [*State v.*] *Sherman* [98 Wn.2d 53, 653 P.2d 612 (1982)] instruction had it been offered. Therefore, counsel's failure to offer it did not prejudice Thomas.

Under RCW 46.61.024, the State is required to prove that the defendant drove in a manner "*indicating* a wanton or wilful disregard for the lives of property of others . . ." (Italics ours.) *Sherman* acknowledged that this mental state element can be inferred from circumstantial evidence. It noted, however, that the inference was rebuttable because the statutory language contemplated proof that the requisite mental state was both objectively manifested and subjectively held. It held that the jury must be instructed that the inference was rebuttable, but that the failure to give such an instruction was harmless if the defendant offered no evidence to rebut the inference. *Sherman,* 98 Wn.2d at 59–60. Thomas offered no such evidence in this case; therefore, the absence of such instruction did not prejudice her. It follows that she has not satisfied the second *Sardinia* element with reference to trial counsel's failure to request the instruction.

Our reading of *Sherman* convinces us that the rebuttal evidence requiring the instruction must consist of an

affirmative showing that the defendant had a noncriminal mental state (*e.g.,* her throttle stuck; she thought the police were robbers, etc.). Thomas offered no evidence to show that she had an innocent mental state. Instead, she employed a diminished capacity defense, not in an attempt to show that she had an innocent mental state, but that she had no mental state at all.

*State v. Thomas,* 46 Wn. App. 723, 726–28, 732 P.2d 171 (1987).

Neither *State v. Coates,* 107 Wn.2d 882, 735 P.2d 64 (1987) nor *State v. Parker,* 102 Wn.2d 161, 683 P.2d 189 (1984) requires a *Sherman* instruction where, as here, Thomas could present no evidence to rebut the inference from circumstantial evidence that she drove with wanton and willful disregard since she had already stated during her trial she could not remember the events at issue. This being the case it, of course, is impossible for the defendant to present rebuttal testimony as to the subjective element of the crime.

While I do not quarrel with the observation of the majority that the performance of trial counsel was deficient, defendant has not shown the errors of counsel were of such a nature as to deprive her of a fair trial. *Strickland v. Washington,* 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).

I dissent.

ANDERSEN, CALLOW, and DURHAM, JJ., concur with DOLLIVER, J.

Reconsideration denied November 24, 1987.