
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In re the Personal Restraint Petition of: | No. 71055-9-I |
| RYAN N. FARRIS, | DIVISION ONE |
| Petitioner. | UNPUBLISHED |
| | FILED: March 24, 2014 |

Cox, J. — Ryan Farris filed this personal restraint petition, claiming that his trial counsel provided ineffective assistance in defending against the prosecution of one count of rape of a child in the first degree. "In sexual abuse cases, because of the centrality of medical testimony, the failure to consult with or call a medical expert is often indicative of ineffective assistance of counsel."[1] "This is particularly so where the prosecution's case, beyond the purported medical evidence of abuse, rests on the credibility of the alleged victim, as

---

[1] Gersten v. Senkowski, 426 F.3d 588, 607 (2d Cir. 2005) (citing Eze v. Senkowski, 321 F.3d 110, 127-28 (2d Cir. 2003); Pavel v. Hollins, 261 F.3d 210, 224 (2d Cir. 2001); Lindstadt v. Keane, 239 F.3d 191, 201 (2d Cir. 2001)).

opposed to direct physical evidence such as DNA, or third party eyewitness testimony."[2]

Additionally, if counsel's conduct can be characterized as legitimate trial strategy or tactics, a claim of ineffective assistance fails.[3] But even strategic decisions are entitled to deference only if they are made after thorough investigation of law and facts or are supported by reasonable professional judgments.[4]

We conclude from this record that Farris has demonstrated his trial counsel was ineffective by failing to provide the representation that the Sixth Amendment requires. Accordingly, we grant the petition.

In October 2008, the State charged Ryan Farris with one count of rape of a child in the first degree. The amended information alleged that the incident occurred between Farris and A.L.,[5] his step-sister, sometime between June 1, 2002 and September 1, 2003. Farris was 14 or 15 at the time, and A.L. was nine or ten.

The State provided discovery materials to defense counsel prior to trial. These materials included a written report from the State's medical expert who

---

[2] Id. (citing Eze, 321 F.3d at 128; Pavel, 261 F.3d at 224).

[3] State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011).

[4] See Strickland v. Washington, 466 U.S. 668, 690-91, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[5] This opinion uses initials to protect the victim's privacy.

later testified at trial. Defense counsel did not retain either a consulting or testifying medical expert for this case.

The case proceeded to a jury trial in September 2009.

At trial, A.L. testified that the incident occurred when she visited her father in Vancouver, Washington. At the time, A.L.'s father was married to Farris's mother. A.L. testified that one night she was alone in a bedroom with Farris. She stated that she asked Farris what "sex" was. She testified that Farris responded by saying he would "show" her, and he put his penis inside her vagina. A.L. testified that she did not tell an adult about this incident until her freshman year of high school.

In addition to A.L.'s testimony, the State presented testimony from A.L.'s mother. She testified that A.L. told her about the incident in December 2007. She said that she took A.L. to counseling, and law enforcement became involved shortly thereafter.

The State also presented testimony from Detective Cynthia Bull who said her involvement in the case was "very minimal" and was primarily to compile information from outside agencies into one case for review. By the time Detective Bull received the case, A.L. had already been interviewed. Detective Bull reviewed the report, asked A.L. "a couple questions," and coordinated a medical evaluation.

The medical expert who testified for the State at trial was Dr. Mary Vader, a pediatrician and expert in child abuse. She conducted a physical exam of A.L. in June 2008, some five or six years after the alleged incident.

3

At trial, Dr. Vader explained the procedure for conducting a physical exam, which includes examining the hymen for potential injuries. She testified that she uses a colposcope to examine the margins of the hymen. A colposcope is a magnifier with a camera on it. Dr. Vader testified that the camera for the colposcope was not working at the time of the examination of A.L. Thus, she did not have any photographs showing this portion of the examination.

Dr. Vader described her examination of A.L. She said A.L. had visible pieces of the margin of the hymen missing at "about the four o'clock position and the 11 o'clock position [of the hymen]." Dr. Vader stated that the 11 o'clock "notch" was less significant because people can have variable anatomy. But she testified that the four o'clock mark was significant because it "means something penetrated that area that stretched the hymen enough to tear it." Dr. Vader's opinion was that these injuries were diagnostic of "some form of penetrating vaginal trauma."

The State did not present any other physical evidence to corroborate that there was a forcible penetration of A.L.

Farris called four witnesses. None were medical experts. Generally, these witnesses testified about the kids' bathing habits and the sleeping arrangements when A.L. came to visit.

The jury found Farris guilty of one count of rape of a child in the first degree. The court sentenced Farris to a term of 93 months in custody.

In his direct appeal of the judgment and sentence, Farris argued, among other things, that his trial counsel was ineffective for failing to object to alleged

4

prosecutorial conduct during closing argument.[6] He did not raise the ineffective assistance claims that he raises here.[7] This court rejected his arguments and affirmed his conviction.[8] The supreme court denied his motion for discretionary review.[9]

This personal restraint petition followed.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Farris argues that his trial counsel was ineffective in not providing the defense that the Sixth Amendment requires. Specifically, he argues that his trial counsel failed to retain either a consulting or testifying medical expert to assist in the defense against this charge of first degree rape of a child. He further argues that trial counsel failed to conduct a reasonable pre-trial investigation to inform his judgment about strategic choices. Finally, Farris makes a number of other arguments that we need not reach for purposes of deciding this case.

To obtain relief on collateral review based on a constitutional error, the petitioner must demonstrate by a preponderance of the evidence that he was actually and substantially prejudiced by the error.[10] But "if a personal restraint

---

[6] State v. Farris, 161 Wn. App. 1022, 2011 WL 1565433, review denied, 172 Wn.2d 1008 (2011).

[7] Id.

[8] Id.

[9] 172 Wn.2d 1008, 259 P.3d 1108 (2011).

[10] In re Pers. Restraint of Davis, 152 Wn.2d 647, 671-72, 101 P.3d 1 (2004).

petitioner makes a successful ineffective assistance of counsel claim, he has necessarily met his burden to show actual and substantial prejudice."[11]

The right to counsel includes the right to effective assistance of counsel.[12] In order to prevail on an ineffectiveness claim, a petitioner must prove that (1) counsel's performance was deficient and (2) the defendant was prejudiced by the deficient performance.[13]

The first requirement involves showing that counsel's performance fell below "an objective standard of reasonableness."[14] Reasonable tactical choices do not constitute deficient performance.[15] Reviewing courts make "every effort to eliminate the distorting effects of hindsight."[16]

For the second requirement, prejudice is defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[17] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[18]

---

[11] In re Crace, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012).

[12] Strickland, 466 U.S. at 686.

[13] Id. at 687.

[14] Id. at 688.

[15] Id. at 689.

[16] In re Pers. Restraint of Rice, 118 Wn.2d 876, 888, 828 P.2d 1086 (1992).

[17] Strickland, 466 U.S. at 694.

[18] Id.

*Retaining a Consulting or Testifying Medical Expert*

Farris argues that he received ineffective assistance of counsel because trial counsel failed to retain either a consulting or testifying medical expert to defend against the first degree child rape charge. We agree.

Generally, "the decision whether to call a witness is a matter of legitimate trial tactics and will not support a claim of ineffective assistance of counsel."[19] But, "depending on the nature of the charge and the issues presented, effective assistance of counsel may require the assistance of expert witnesses to test and evaluate the evidence against a defendant."[20]

Medical evidence is considered one of the strongest types of corroborating evidence, especially in cases involving child rape. This was articulated in State v. Swan, where the supreme court considered whether there was sufficient corroborating evidence to justify the trial court allowing into evidence hearsay statements of a child victim in a rape case.[21] It stated, "The most effective types of corroboration in such cases, of course, are eyewitness testimony, a confession or admissions by the accused, and *medical* or scientific *testimony documenting abuse*."[22]

In Gersten v. Senkowski, the Second Circuit considered whether failure to call an expert witness in a sexual assault case constituted ineffective assistance

---

[19] State v. Maurice, 79 Wn. App. 544, 552, 903 P.2d 514 (1995).

[20] State v. A.N.J., 168 Wn.2d 91, 112, 225 P.3d 956 (2010).

[21] 114 Wn.2d 613, 618, 790 P.2d 610 (1990).

[22] Id. at 622-23 (emphasis added).

of counsel.[23] Gersten cites and applies principles that govern our disposition of this part of the case.[24]

There, Gersten was charged with six counts of first degree sodomy, two counts of first degree sexual abuse, and one count of endangering the welfare of a child.[25] The charges, which were brought in 1999, were based on incidents that occurred in 1995 and 1998.[26] At trial, the prosecution presented five witnesses, including the alleged victim, the alleged victim's mother, the alleged victim's ex-boyfriend, a medical expert who had examined the alleged victim, and a child psychologist.[27] The State's medical expert described the results of her physical examination of the alleged victim, which occurred in 1999.[28] She described finding clefts and notches in the hymenal tissue and stated that her findings were "highly suggestive of penetrating trauma to the hymen."[29]

The defense rested without presenting any evidence.[30] Defense counsel

---

[23] 426 F.3d 588 (2d Cir. 2005).

[24] Id.

[25] Id. at 591.

[26] Id.

[27] Id.

[28] Id. at 594-95.

[29] Id. at 595.

[30] Id. at 597.

argued that the alleged victim was either lying or engaged in fantasy.[31] A conviction followed.

Gersten moved to vacate the judgment of conviction claiming, among other things, that his trial counsel had conducted an inadequate pretrial investigation and had improperly failed to call expert witnesses to rebut the prosecution's experts.[32] In support of his motion, Gersten submitted an affidavit from a medical doctor who concluded that the physical evidence did not appear to be indicative of penetrating trauma and stating that none of the medical evidence corroborated the allegations of abuse of the alleged victim's testimony.[33]

The district court granted Gersten's petition, deciding that trial counsel's performance was constitutionally deficient for many reasons.[34] One of those reasons was trial counsel's failure to conduct an adequate pre-trial investigation into certain medical evidence and failure to arrange for evaluation of this evidence by an independent expert.[35] It found this error "most substantial" because it limited counsel's ability to effectively cross-examine the State's medical expert.[36] The court found that "'had counsel consulted a medical expert,

---

[31] Id. at 598.

[32] Id. at 599.

[33] Id. at 599-600.

[34] Id. at 605.

[35] Id.

[36] Id.

it is likely he would have been able to present expert testimony . . . to largely

rebut the conclusions of [the State's expert]" and that this would have "'cast

considerable doubt on [the State's expert's testimony],' and supported an

inference 'that no sexual abuse had occurred [and] . . . that no penetrating sexual

activity whatsoever had taken place.'"[37]

The Second Circuit affirmed.[38] It explained, "In sexual abuse cases,

because of the centrality of medical testimony, the failure to consult with or call a

medical expert is often indicative of ineffective assistance of counsel."[39]

Additionally, it stated, "This is particularly so where the prosecution's case,

beyond the purported medical evidence of abuse, rests on the credibility of the

alleged victim, as opposed to direct physical evidence such as DNA, or third

party eyewitness testimony."[40]

Further, regarding Gersten's counsel, the Second Circuit stated:

Counsel essentially conceded that the physical evidence was
indicative of sexual penetration without conducting any
investigation to determine whether this was the case. As
[Gersten's post-trial medical expert's] affidavit demonstrates, had
counsel conducted such an investigation, counsel would likely have
discovered that exceptionally qualified medical experts could be
found who would testify that the prosecution's physical evidence
was not indicative of sexual penetration and provided no
corroboration whatsoever of the alleged victim's story. Counsel
could thus have presented a strong affirmative case that the

---

[37] Id.

[38] Id. (quoting Gersten v. Senkowski, 299 F. Supp. 2d 84, 103-04, (E.D.N.Y. 2004)).

[39] Id. at 607.

[40] Id.

charged crime did not occur and the alleged victim's story was incredible in its entirety.[41]

Here, for the reasons articulated in <u>Gersten</u>, Farris received ineffective assistance of counsel that deprived him of his Sixth Amendment right.

Farris's trial counsel had no medical training and had never worked on any case that involved a colposcopic examination or expert gynecological testimony. By his own admission, trial counsel's failure to call an expert witness was not a trial tactic. He stated, "[B]efore trial, I did not contact a doctor or medical expert to review matters relating to this case. This was not a strategic decision. Rather, I did not see the need for a medical expert until close to the time of trial." As trial approached and trial counsel recognized the need for an expert, he specifically asked his law firm "to provide funding for an expert witness to review the medical reports or to consult with him regarding the medical evidence." But his supervisors "told [him] they would not provide any funding for experts."

Trial counsel did not interview the State's expert, Dr. Vader, before trial. Rather, he attempted to complete Internet research regarding injuries to the hymen. He interviewed Dr. Vader at the courthouse prior to the start of the second day of trial. The interview lasted for just a few minutes.

At trial, Dr. Vader testified that she conducted a physical exam of A.L. Dr. Vader testified that she observed a "visible piece [of the edge of A.L.'s hymen] missing at about the four o'clock position and the 11 o'clock position." She

---

[41] <u>Id.</u> at 608.

testified that it was her opinion that these injuries were diagnostic of "some form of penetrating vaginal trauma."

In closing argument, the State focused on this testimony and physical evidence as corroborating its theory. The State argued:

> You heard testimony that corroborates [A.L.'s] statements. In jury selection we talked about things you might like to see as jurors. One of the things that you all said you might like to see is physical evidence, medical evidence.
>
> Well, in this case a medical exam, a sexual assault exam was done. And that sexual assault exam showed . . . missing pieces of the hymen at four o'clock and 11 o'clock. Now, in that medical exam the doctor asked, have you had any sexual activity other than this incident, and the answer was no.
>
> So there's no other explanation under that account—there's no other explanation before you jurors for those notches, those missing pieces of the hymen.[42]

Farris now submits evidence in the form of a declaration of Dr. Philip Welch, a medical doctor certified by the American Board of Obstetrics and Gynecology.

In the affidavit, Dr. Welch disputes both the accuracy and reliability of Dr. Vader's testimony. He testifies that Dr. Vader's findings are consistent with normal anatomical variations and are not conclusive evidence of penetrating trauma. He states that it is "highly unlikely that brief penetration with a penis could produce tearing of the hymen—such that would be visible in two places months or years later." Further, Dr. Welch questions Dr. Vader's methods and

---

[42] Report of Proceedings (Sept. 22, 2009) at 154.

12

reliance on the colposcope, stating that leading national advocates "actively discourage its use in sexual assault evidence gathering."

Additionally, he states that Dr. Vader did not obtain any photographs or prepare a diagram to document her findings or conclusions. He says that he would have pointed out these issues to trial counsel, would have urged trial counsel to obtain documentation of Dr. Vader's examination or request an independent examination, and would have told trial counsel to study these matters to prepare a competent cross-examination at trial.

There is no evidence in this record that the State identifies that addresses or rebuts the evidence that Dr. Welch's declaration states. Therefore, we must assume that the State has no such evidence and this evidence establishes what trial counsel would have known if he had retained a consulting expert.[43]

Dr. Welch's declaration severely undermines the State's expert testimony from Dr. Vader, the only corroborating physical evidence of the charged crime. The affidavit alleges that Dr. Vader's methods were unreliable, that her conclusions were unsupported, and that another expert would have offered an alternative explanation for her findings—that the visible tears on the edge of A.L.'s hymen were normal anatomical variations.

Dr. Welch's declaration also demonstrates how trial counsel's failure to consult with a medical expert left him ill prepared for trial. Trial counsel was relegated to preparing for cross-examination by conducting "internet research regarding injuries to the hymen." This was not an adequate pre-trial investigation

---

[43] See In re Brett, 142 Wn.2d 868, 876, 16 P.3d 601 (2001).

into the medical evidence, and the failure to retain a consulting expert limited his ability to effectively cross-examine the State's medical expert at trial.

Additionally, Dr. Welch's declaration reveals that if trial counsel had retained a testifying expert, Farris would have been able to present expert testimony to rebut conclusions of the State's expert. The declaration shows that he likely could have found qualified medical experts who would testify that the State's physical evidence was not indicative of sexual penetration. This would have rebutted the State's expert's conclusions, cast doubt on the only corroborating physical evidence, and supported an inference that no penetrating trauma took place.

Further, like in Gersten, these failures were particularly significant in this case because, beyond the physical evidence, the State's case rested solely on the credibility of A.L. and her mother.[44] There was no direct physical evidence such as DNA or third party eyewitness testimony. Thus, Dr. Vader's medical testimony "was central not only because it constituted the most extensive corroboration that any crime occurred, but because to undermine it would undermine the alleged victim's credibility and thus the entire prosecution case . . . ."[45]

The State makes a number of arguments that Farris's trial counsel was not ineffective for failing to retain a testifying medical expert. These arguments are not persuasive.

_____

[44] See Gersten, 426 F.3d at 613.

[45] Id. 608.

14

First, the State argues that Farris cannot show he was prejudiced because trial counsel "effectively cross-examined Dr. Vader." The State claims that the cross-examination was successful because trial counsel got Dr. Vader "to concede the only issue in dispute: whether the notches on A.L.'s hymen were the result of sexual activity." But the entirety of trial counsel's cross-examination constitutes less than a page of the transcript. And, as Dr. Welch's affidavit demonstrates, trial counsel was ill-prepared for cross-examination without the medical opinions of a consulting expert that could have rebutted Dr. Vader's conclusions.

Further, while trial counsel got Dr. Vader to concede that the tears in the hymen might not have been due to "sexual activity," it does not appear that Dr. Vader conceded that the tears in the hymen were due to an object being inserted into the vaginal canal. Thus, trial counsel was not able to get her to concede the most damaging part of her testimony—that the injuries were caused by forcible vaginal penetration.

Additionally, as discussed previously, Dr. Welch's testimony would have suggested a completely different alternative—that the tears in the hymen were normal. This type of testimony would have cast doubt on the occurrence of the sexual assault altogether, would have questioned A.L.'s credibility, and would have discredited the State's evidence. Overall, trial counsel's cross-examination of Dr. Vader did not negate the prejudice resulting from failure to retain a defense expert.

Next, the State argues that the decision to call a witness is "'presumed to be a matter of legitimate trial tactics.'"[46] And it relies on State v. Mannering to argue that the failure to call a defense expert is strategic.[47] But Mannering limited its application to the facts of that case.[48] Further, as discussed previously, the decision to call an expert was *not* a legitimate trial tactic in this case.

Moreover, the supreme court has said that depending on the nature of the charge and the issues presented, effective assistance of counsel may require the assistance of expert witnesses.[49] As we extensively discussed previously in this opinion, a claim of ineffective assistance of counsel can be based on counsel's failure to retain a consulting and a testifying medical expert where corroboration plays a central role.[50] The State fails to deal persuasively with Gersten.[51]

The State also relies on Mannering to argue that even if defense counsel was deficient, the defendant must demonstrate the result of the proceeding

---

[46] Response to Personal Restraint Petition at 34 (quoting Davis, 152 Wn.2d at 742).

[47] Id. (citing State v. Mannering, 150 Wn.2d 277, 287, 75 P.3d 961 (2003)).

[48] See Mannering, 150 Wn.2d at 287.

[49] A.N.J., 168 Wn.2d at 112.

[50] See, e.g., Gersten, 426 F.3d at 607; Eze, 321 F.3d at 128; Pavel, 261 F.3d at 224.

[51] 426 F.3d at 588.

16

would have been different.[52]  It argues that Dr. Welch's testimony would have had no utility because "Dr. Vader testified that notches on the hymen could be naturally occurring."[53]  But the transcript of Dr. Vader's testimony does not support this assertion.  While Dr. Vader stated that individuals can have variable anatomy, this comment related to her explanation of why the 11 o'clock notch was less significant than the four o'clock notch.[54]  Dr. Vader was explicit that the four o'clock notch was significant and that it indicated that something penetrated that area.[55]

Further, even if Dr. Vader made this statement, Dr. Welch's testimony would have had value beyond this conclusion.  Dr. Welch would have been able to call into question Dr. Vader's methods and conclusions, which would have cast doubt on the only corroborating evidence presented by the State and subsequently emphasized in the State's closing argument.

We also note that the State's argument fails to deal with trial counsel's failure to retain a consulting expert prior to trial.  Counsel was relegated to doing research about medical issues using the Internet.  On its face, this type of preparation is inadequate where technical expertise on this very important medical question was needed.  Had counsel done a proper job, it is likely he

---

[52] Response to Personal Restraint Petition at 34-35 (citing Mannering, 150 Wn.2d at 287).

[53] Id. at 35.

[54] Report of Proceedings (Sept. 22, 2009) at 90.

[55] Id.

would have discovered earlier that the medical examination and conclusions of the State's medical expert were subject to shortcomings that could have been pointed out at trial. Instead, counsel only apparently learned of the difficulties when he briefly interviewed the State's medical expert shortly before her testimony on the day of trial.

In sum, it was deficient performance for trial counsel to fail to retain either a consulting or testifying medical expert to defend against the charge of first degree rape of a child. Additionally, given that the State's medical expert testimony was the only evidence at trial corroborating a sexual assault, Dr. Welch's affidavit plainly reveals why we cannot feel any confidence in the outcome.

### Pre-Trial Investigation and Defense Theory

Farris also argues that he received ineffective assistance of counsel because trial counsel failed to conduct a reasonable pre-trial investigation. He argues that trial counsel should never have presented a defense centering on the date of the alleged offense and that if trial counsel had "conducted the most rudimentary research, he would have discovered that this defense was certain to fail." We agree.

The "presumption of counsel's competence can be overcome by a showing, among other things, that counsel failed to conduct appropriate investigations."[56] If counsel's conduct can be characterized as legitimate trial

---

[56] State v. Thomas, 109 Wn.2d 222, 230, 743 P.2d 816 (1987).

strategy or tactics, a claim of ineffective assistance fails.[57] But even strategic decisions are entitled to deference only if they are made after thorough investigation of law and facts or are supported by reasonable professional judgments.[58] "In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."[59]

Counsel's "lack of preparation and research cannot be considered the result of deliberate, informed trial strategy."[60] "[C]ounsel must, at a minimum, conduct a reasonable investigation enabling him to make informed decisions about how best to represent his client."[61] A decision not to investigate must be directly addressed for reasonableness, with again great deference given to counsel's judgments.[62]

A defendant raising a "failure to investigate" claim must show "a reasonable likelihood that the investigation would have produced useful information not already known to defendant's trial counsel."[63] And "[i]n evaluating

---

[57] Grier, 171 Wn.2d at 33.

[58] Strickland, 466 U.S. at 690-91.

[59] Id. at 691.

[60] Hyman v. Aiken, 824 F.2d 1405, 1416 (4th Cir. 1987).

[61] Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).

[62] Strickland, 466 U.S. at 691.

[63] Davis, 152 Wn.2d at 739.

prejudice, 'ineffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case.'"[64]

Here, trial counsel's defense strategy was not based on a thorough investigation of the law or facts or supported by reasonable professional judgment.

Trial counsel failed to thoroughly investigate the law about the State's ability to amend the information to expand the date range. Trial counsel wrongly assumed that he could defend the charge based only on the fact that A.L. was mistaken about the date of the alleged offense. During opening statements, trial counsel told the jury that the State's case was not believable because A.L. had not visited Washington during the summer of 2002. He later stated in his declaration, "This was the central theme of the defense in this case."

But this defense quickly collapsed when, following opening statements, the State moved to amend the information to expand the date range, and this motion was granted. Trial counsel failed to realize that this action was a possibility. As he stated later, "I had never faced an issue like this before and I did not anticipate that the State might be permitted to amend the information after the start of the trial."

As Farris notes, even rudimentary research would have revealed that the State would be permitted to amend the charge during trial to expand the time frame. Trial counsel's defense was not based on a thorough investigation of the

---

[64] Id. (internal quotation marks omitted) (quoting Rios v. Rocha, 299 F.3d 796, 808-09 (9th Cir. 2002)).

20

law, or on a reasonable decision that a particular investigation was unnecessary, and this constituted deficient conduct.

Further, because trial counsel thought that he could rest the defense solely on the discrepancy in dates, he failed to conduct a reasonable pre-trial investigation into the facts. As a result, he did not make informed decisions about how to best represent his client. He states:

> Before trial, I did not conduct any formal investigation regarding [A.L.] or her family. I did not conduct any independent investigation regarding [A.L.] or her family members in Colorado. I prepared the case for trial with the hopes that I could raise doubt by showing that [A.L.] was not in the State of Washington during the summer of 2002.[65]

Additionally, Farris establishes a reasonable likelihood that the investigation would have produced useful information not already known to trial counsel. An investigation conducted by Farris's current counsel revealed the following: (1) A.L. never indicated she was experiencing pain or physical discomfort during her visit in 2003; (2) there was no evidence of an assault such as bleeding on A.L.'s clothing; (3) at the end of A.L.'s visit in 2003, she "begged her mother to let her live at [her father's] house permanently"; (4) in 2004, A.L. submitted an affidavit to a court in Colorado in which she claimed a number of inappropriate things happened during her 2003 visit, but she made no mention of inappropriate contact with Farris; (5) in 2008, A.L. discovered Farris was living in Colorado with A.L.'s father, and she asked if she could live with them; (6) A.L.'s allegation was made after she was told she could not live with her father. This

---

[65] Declaration of Michael Green ¶ 22.

was useful information that undermined A.L.'s credibility and suggested that A.L. had motivation to falsely accuse Farris.

Moreover, Farris was prejudiced by this lack of legal and factual investigation. As discussed previously, in evaluating prejudice, ineffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case.[66] Here, the State's case was not strong. It rested solely on the credibility of A.L., A.L.'s mother, and expert testimony from a physical exam conducted five or six years after the alleged offense.

Although Farris's trial counsel cross-examined each of the State's witnesses, by his own admission, trial counsel stated, "Unfortunately, I was unable to seriously challenge [A.L.]'s credibility and I did not know of any information that might help explain why [A.L.] had fabricated these claims." He further states, "Had I known of [such information], I certainly would have presented it during [Farris's] trial. It is my belief that this type of information would have significantly undermined the allegations of [A.L.] at the trial."

The State argues that trial counsel was aware of A.L.'s confusion regarding dates and knew that the information could be amended. According to the State, there is "no reason to believe trial counsel would have prepared a defense that was solely contingent upon an error in the charging document." The problem with the State's argument is that it conflicts with trial counsel's candid admission that he did *not* know that the information could be amended during

---

[66] See Davis, 152 Wn.2d at 739.

trial, and he did prepare a defense contingent on error in the charging document. We resolve this conflict against the State for purposes of this argument.

The State also contends that once the State amended the information, "trial counsel adjusted his trial strategy accordingly" and used this discrepancy to argue that A.L. was not credible. But, even if trial counsel used A.L.'s confusion about the date to his advantage at trial, his reliance on this defense resulted in his complete failure to conduct an adequate pre-trial investigation. Accordingly, this argument is also not persuasive.

The State also asserts that the evidence related to the motion to modify parenting time and related affidavits were provided in pre-trial discovery, and that any evidence not to use them was strategic. It appears that this motion and supporting affidavits were provided to trial counsel. But this motion, from 2004, did not contain all of the information revealed by the subsequent investigation as discussed previously, and trial counsel admits that he did not know of such information. Thus, even if trial counsel had some of the relevant documents or if his approach was strategic, it was not after a thorough investigation of the facts or supported by reasonable professional judgment, and it should not be entitled to deference. The State's argument to the contrary is not persuasive.

The State also argues that this evidence, including A.L.'s affidavit, was inadmissible due to the State's motion in limine and because the information was collateral. Accordingly, the State argues that Farris was not prejudiced as a result of this failure to investigate.

23

In response, Farris argues that A.L.'s affidavit would be admissible for "impeachment by omission." We need not decide whether the affidavit would have been admissible. The information in the affidavit could have led to admissible evidence if counsel had performed an investigation.

Lastly, Farris makes a number of other claims that he received ineffective assistance of counsel. Specifically, he argues that his trial counsel lacked sufficient experience, "made extraordinary errors during the trial," and failed to move for the production of A.L.'s counseling records. He also argues that his trial counsel's law firm had a conflict of interest. Because we resolve this case based on the failures described above, we need not reach these other claims.

To summarize, the charge of first degree rape of a child is very serious. A.L. has a right to have that charge prosecuted to the full extent of the law. Farris, as well, has a right to a fair trial and a constitutional right under the Sixth Amendment to proper representation. He has not yet received that for the reasons we explained in this opinion.

We grant the petition.

_____
Cox, J.

WE CONCUR:

_____
Spearman, A.C.J.

_____