IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 78925-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ELJAY BERNETTE MITCHELL, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | FILED: March 9, 2020 |

HAZELRIGG, J. — Eljay B. Mitchell seeks reversal of his convictions for second degree burglary and violation of an anti-harassment order, arguing that his trial counsel was ineffective and that the State's evidence was insufficient. Because the State concedes that it did not present sufficient evidence to prove that Mitchell knew of the existence of the anti-harassment order, we reverse that conviction. However, because Mitchell cannot show that he was prejudiced by his attorney's allegedly deficient performance, we affirm the burglary conviction.

FACTS

Eljay Mitchell worked as an assistant manager at Roosevelt Self Storage for about three years. Kevin Purdy was the district manager for the storage facility's parent company. As part of his management duties, Purdy visited Roosevelt Self Storage about three times per month and was familiar with the employees who worked there, including Mitchell. Purdy fired Mitchell in January

2017. Mitchell was upset about the termination and refused to return his work keys that provided access to all parts of the facility.

In February 2017, management obtained an anti-harassment protection order against Mitchell restraining him from going within 1,000 feet of Roosevelt Self Storage for one year. Mitchell was not present at the protection order hearing and neither he nor his attorney signed the order. The order stated that the restraints in the order were the same as those in the temporary order, with which Mitchell had been personally served, and "[f]urther service [was] not required." (Alterations in original).

On March 13, 2017, there was a break-in at Roosevelt Self Storage shortly after midnight. The storage facility was equipped with security cameras. The videos showed someone entering Roosevelt Self Storage through an unsecured garage door, walking around the facility, and carrying a white banker's box. Multiple security cameras captured the person walking around the facility over a period of more than three hours. The person appeared to be a man wearing an orange shirt, a tie, and a black scarf with nothing covering his bald head or face. The person opened a utility closet that would have required a key for access. Management discovered that the alarm had sounded the next morning and told police they recognized the man in the security footage as Mitchell.

On March 27, 2017, an employee left the front office of Roosevelt Self Storage unlocked during business hours while showing a customer a storage unit. The security camera in the office captured video of a person dressed in a black hooded jacket entering the office, walking behind the counter to the place where

the cash drawer was located, and leaving through the front door. The hood of the person's jacket was pulled tight around their face. Cash and deposits were taken from the cash drawer. The cash drawer required a key to open. After this incident, management started storing the cash drawer in a different location at the facility.

In the early hours of April 17, 2017, the security cameras recorded the glass front door of the office shattering. About half an hour later, the videos showed a person entering through the broken door and walking behind the counter in the front office near where the cash drawer was located before it was moved. The person appeared to be wearing a black hooded jacket with the hood pulled tight around their face.

Mitchell was charged with violation of an anti-harassment order and three counts of burglary in the second degree. The charging document alleged that Mitchell had, "on or about March 13, 2017," willfully disobeyed the terms of "a civil anti-harassment protection order issued under RCW chapter 10.14 by being within 1000 feet of 6910 Roosevelt Way NE, in violation of the terms of said order."

At trial, the jury was shown the security videos of all three incidents and still photographs from the March 13, 2017 footage. Purdy testified that he was 100 percent certain that the man in the still photographs was Mitchell. He also testified that he was confident that he recognized the man in the March 27, 2017 videos as Mitchell and that the man was wearing a North Face jacket that Mitchell commonly wore. Purdy testified that the man in the April 17, 2017 videos was wearing the same jacket as the man in the March 27, 2017 videos and that he was confident that the man was Mitchell.

Seattle Police burglary detective Ron Traverso also testified at the trial that he had investigated the three incidents at Roosevelt Self Storage. Traverso testified that he had not gone to the storage facility as part of his investigation, but had watched the security footage, reviewed the incident reports, and taken statements from Purdy and another manager. He stated that he had never come in contact with Mitchell.

On cross-examination, defense counsel asked if Traverso recognized the person in the security videos. He responded that he compared the still photographs of the person in the videos to the driver's license photo of the person that the employees believed to be the person in the videos; but otherwise had never seen the person. On redirect examination, Traverso identified the Department of Licensing photograph that he had compared with the subject of the security video during the investigation. The photograph was admitted into evidence. On recross examination, defense counsel elicited testimony that Traverso believed that the person in the videos was the same as the one in the driver's license photo, but he had not interacted with the person in the videos.

The jury found Mitchell guilty of the March 13, 2017 burglary and guilty of violating the anti-harassment order. The jury found Mitchell not guilty of the other two burglary charges. He was sentenced to six months of work/education release and electronic home detention.

ANALYSIS

I.  Ineffective Assistance of Counsel

Mitchell contends that his trial counsel was ineffective because he opened the door to otherwise inadmissible identification evidence from Detective Traverso. Mitchell argues that his counsel's deficient performance was prejudicial because identity was the key issue disputed at trial and Traverso's identification was one of the key facts distinguishing the burglary charge on which the jury convicted from the two burglary charges of which Mitchell was acquitted.

Every defendant in a criminal case has the constitutional right to effective assistance of counsel. U.S. Const. amend VI; Const. art. 1 § 22; Strickland v. Washington, 466 U.S. 668, 685–86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Counsel's assistance is ineffective when the attorney's performance was deficient and the deficiency prejudiced the defendant. Strickland, 466 U.S. at 687; State v. Thomas, 109 Wn.2d 222, 229, 743 P.2d 816 (1987). If either prong of the test is not satisfied, our inquiry ends. State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

Deficient performance is that which falls below an objective standard of reasonableness based on consideration of all the circumstances. State v. McFarland, 127 Wn.2d 322, 334–35, 899 P.2d 1251 (1995). There is a strong presumption that counsel's representation was effective. Id. at 335. Counsel's performance is not deficient if it can be characterized as legitimate trial strategy or tactics. Id. at 336.

To show that deficient performance prejudiced the defendant, the appellant must show that, in the absence of the alleged error, there is a reasonable probability that the result of the proceeding would have been different. Strickland, 466 U.S. at 694. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Harrington v. Richter, 562 U.S. 86, 104, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011) (quoting Strickland, 466 U.S. at 693, 387) (internal citation omitted). "The likelihood of a different result must be substantial, not just conceivable." Id. at 112.

Despite Mitchell's contention that "the March 13 video is not high quality; the suspect's face can never be seen close up; and there were no eyewitnesses to the burglary[,]" the subject's face and head are fully visible and uncovered in the videos of the first incident. In the second and third videos, the subject's head and most of his face were covered. Purdy, who interacted with Mitchell regularly for three years, testified that he was 100 percent certain that the person in the videos was Mitchell. The jury also had the opportunity to compare the person in the videos with the driver's license photograph, as well as with the defendant in the courtroom. Even if Traverso had not testified that he believed the person in the security footage was the person in the driver's license photograph, there is no reasonable probability that the result of the proceeding would have been different. Because he cannot show prejudice, Mitchell's claim of ineffective assistance of counsel fails.

II.    Sufficiency of Evidence

Mitchell also argues that there is insufficient evidence that he knew of the anti-harassment order and willfully disobeyed it.

Due process requires that the State prove beyond a reasonable doubt every fact necessary to constitute the crime charged. In re Winship, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).  The appellate court reviews the sufficiency of the evidence by assessing whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, viewing the evidence in the light most favorable to the State. State v. Vasquez, 178 Wn.2d 1, 6, 309 P.3d 318 (2013).  If the appellate court finds the evidence insufficient to prove a charge, it must reverse the conviction and dismiss the charge with prejudice. State v. Hickman, 135 Wn.2d 97, 103, 954 P.2d 900 (1998).

The State concedes that it did not establish that Mitchell knew of the existence of the February 8, 2017 anti-harassment order.  We accept the State's concession and reverse Mitchell's conviction for violation of an anti-harassment order.[1]

Affirmed in part, reversed in part.

WE CONCUR:

---

[1] Because we reverse this conviction for insufficient evidence, we do not reach Mitchell's argument that the charging document omitted an essential element of the charged anti-harassment order violation.