IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31256-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARCO A. PINDTER-BONILLA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Marco Pindter-Bonilla drove 103 m.p.h. on Interstate 90 (I-90) at midnight, because, according to him, he was a good son wishing to return home to his mother. In his pocket, Pindter-Bonilla had a baggy of ecstasy that, according to him, he retrieved out of curiosity at a McDonald's restaurant. His "good son" and "curious gatherer" defenses failed at trial, and he now asks this court to overturn his convictions of reckless driving and possession of a controlled substance because his trial counsel provided ineffective assistance. Pindter-Bonilla contends his counsel provided ineffective assistance when he failed to investigate an unwitting possession defense; raise an unwitting possession defense; meaningfully challenge the State's case against him for reckless driving; and investigate whether an interpreter was needed. We affirm his convictions.

FACTS

Everett resident Marco Pindter-Bonilla journeyed to Selah on August 18, 2012, to help a friend see his hospitalized grandfather. Afterward, Pindter-Bonilla stopped in Sunnyside where he hoped to see illegal races of cars down the city streets. He got hungry and stopped at a McDonald's restaurant. At the McDonald's, Pindter-Bonilla opened his car door and found a bag where the parking lot meets the sidewalk. Pindter-Bonilla realized immediately that the bag contained ecstasy because he knows young people who take drugs. He put the bag containing ecstasy in his pocket and carried on with his day.

At the end of the day, Marco Pindter-Bonilla set out to return home in his silver BMW 325, because "no matter what time it is [he] tr[ies] to go to [his home] to be a good son." Report of Proceedings (RP) at 81. Around midnight on August 18, Washington State Patrol Trooper Jay Farmer observed Marco Pindter-Bonilla traveling at a high rate of speed on I-90, outside of Ellensburg, and engaged his radar detector. The detector indicated Pindter-Bonilla traveled at 112 m.p.h. Farmer requested assistance over his radio. Trooper Mel Sterkel was in the area and observed Pindter-Bonilla traveling at a high rate of speed. Trooper Sterkel engaged his radar detector, which indicated Pindter-Bonilla traveled at 103 m.p.h. Farmer stopped Pindter-Bonilla.

After Marco Pindter-Bonilla stopped, Trooper Jay Farmer asked him to step out of the car. Pindter-Bonilla complied. As they walked to the back of the car, Farmer asked

2

Pindter-Bonilla why he sped. Pindter-Bonilla explained that he was in a hurry to return to Everett. Because his excuse did not justify speeding, Farmer arrested Pindter-Bonilla for reckless driving and advised him of his rights.

Before Trooper Jay Farmer asked Marco Pindter-Bonilla any questions, he searched him. In the right front pocket of Pindter-Bonilla's jeans, Farmer found a baggy. Inside the baggy, Farmer found one partially smashed pill, and a lot of powder. Farmer asked Pindter-Bonilla, "what is this?" Pindter-Bonilla immediately responded, "ecstasy," which he claimed to have found in a McDonald's bathroom in Sunnyside. RP at 34. Pindter-Bonilla declined to elaborate on how he knew the pill and powder were ecstasy.

## PROCEDURE

The State of Washington charged Marco Pindter-Bonilla with reckless driving and possession of the controlled substance methylenedioxymethamphetamine (MDMA), or ecstasy.

At trial, both Troopers Jay Farmer and Mel Sterkel testified that they calibrated their radar detectors before their shift began that day. Trooper Sterkel acknowledged on cross- examination that he simply followed the instructions for calibrating his device; he could not testify that his instrument worked properly. On redirect, Sterkel confirmed that the speeds his device reported corresponded with his visual estimate, in an area with which he was familar.

DeVonne Hause, a Washington State Patrol (WSP) forensic scientist, testified the

3

crushed pill and powder contained MDMA, which she knew to commonly be called ecstasy. On cross-examination, defense counsel asked if Hause could tell the jury how much ecstasy the pill contained. She could not. Hause explained that the lab does not quantify the amount of the substance that is controlled, only that a controlled substance is present.

Marco Pindter-Bonilla also testified. When he took the stand, he said, "I want to apologize for my language. I mean my pronunciation is not perfect. If I myself spell something or I cannot express myself let me know. You can like you can reask me questions and I can try to answering then like trying to explain better." RP at 77. His counsel agreed to repeat any questions he did not understand, and asked Pindter-Bonilla to tell the jury what happened that day.

At trial, defense counsel asked Marco Pindter-Bonilla how fast he traveled on his way home. Pindter-Bonilla stated he was going "a hundred miles per hour." RP at 81. To clarify, defense counsel followed up, at which point Pindter-Bonilla expressed for the first time an inability to understand a word.

> Q. You think you were driving that fast the whole way?
> A. Well, I wasn't like I wasn't real speeding because my car is a stick shift. If I leave her in fifth gear it starts slowing down no matter what. So I can't put it in neutral. I put it in neutral and I was just I don't know how to explain I was—
> Q. That's okay. That's all right.
> A. I wasn't speeding like you know but I was—my like if I put the car in neutral it just goes you know.
> Q. Let me understand. If you were going a hundred miles per hour

4

then you were speeding, you understand that?
A. Yeah, I understand that.
Q. Okay. When did you put your car in neutral?
A. Right when I got out of Yakima.
Q. Yakima. So you were coasting when you're [sic] car was in neutral?
A. I don't understand that word.
Q. Let me—we might come back to this in a little bit but for how many miles do you think you were traveling over a hundred approximate miles per hour? For what distance?
A. 3 to 4 miles.
Q. 3 to 4 miles. You know how far Yakima is from here, right? Do you have an idea?
A. 20 minutes away.
Q. So you were driving a hundred miles an hour that whole way from Yakima to here that whole 20 miles?
A. No.
Q. When did you—how fast were you traveling most of the way from Yakima to here?
A. A hundred miles per hour. That's I just keep it up like the same speed.

RP at 81-83.

Marco Pindter-Bonilla next spoke about his encounter with Trooper Farmer.

Pindter-Bonilla testified he saw Trooper Farmer pull onto the freeway, immediately turn

on his lights, at which point Pindter-Bonilla pulled over. Trooper Farmer told him to get

out of the car and arrested him. Pindter-Bonilla's second difficulty with language

follows:

Q. Did he handcuff you?
A. Yes.
Q. What did he handcuff you to? Did he handcuff you to anything?
A. I—yeah he—I don't know. I don't understand.
Q. You don't understand my question?

5

> A. Yeah.
> Q. Did he handcuff you to the rear of the car?
> A. Yeah.
> Q. He did? He handcuffed you to—did you understand why he did that?
> A. I know I was speeding but I thought I was only going to get a ticket for it or something like that.

RP at 84. Defense counsel asked "what happened then?" RP at 85. Pindter-Bonilla replied, "[h]e took me to the—before we got—before we got he took me to the jail to here to the jail. I mean like everything what happened or I don't get it?" RP at 85. Counsel, realized his statement was ambiguous and asked, "when [Farmer] pulled up in the car outside the jail[,] what happened then?" RP at 85. Pindter-Bonilla explained:

> A. I can't understand the question that he asked me. He asked me if we can try to work something out. I don't—I didn't you know kind of understand the question.
> Q. And do you remember exactly what he said to you?
> A. Yeah. Before we would—you go to jail, he let me make a call to my mom but nobody answered. And before he got me to jail he told me he parked out. He is like we can work out something. I didn't understand. I was just like you know.

RP at 85. Pindter-Bonilla then drew a diagram of the area where the traffic stop occurred.

On cross-examination, Marco Pindter-Bonilla admitted that driving 100 m.p.h. is dangerous and that he knew he had ecstasy. He also stated that he did not understand what Trooper Farmer meant when he asked whether they could work something out. Pindter-Bonilla explained this was likely because his English is not very good. On

6

redirect, Pindter-Bonilla stated that he planned to throw the ecstasy away because he "wasn't sure what it was." RP at 93.

During closing arguments, Marco Pindter-Bonilla's counsel began by asserting his theory of the case, that the "State has not produced all of the evidence that you need and we need for a conviction." RP at 111. Specifically, counsel directed the jury's attention to the WSP lab technician who did not know the amount of MDMA, the active ingredient in ecstasy, the pill contained. Counsel expressed his concern to the jury that he did not want "innocent people like [him]self to wind up getting in trouble for having something that [he] do[esn't] even know about or picking up a trace amount of something." RP at 111. The State objected, noting that Pindter-Bonilla had not requested an unwitting possession instruction. The court said, "[u]nderstood. Thank you. Please continue." RP at 112. Defense counsel continued, "I think it matters to know is this thing primarily a controlled substance or is it something else." RP at 112.

During closing, Marco Pindter-Bonilla's counsel argued for acquittal on the charges of reckless driving: "The law on reckless driving as state pointed out to you this instruction 'wanton' means 'acting intentionally in heedless disregard of consequences and such surrounding circumstances and conditions that reasonable persons would know or have reason to know such contact would in a high degree of probability harm the person or property of another.'" RP at 113. In applying that law to the facts, counsel stated, "I don't know a whole lot about cars so I am just going to rely on your knowledge.

7

I anticipate and I think we heard from Trooper Farmer, State Patrol vehicles can handle those types of speeds, BMW is a high performance vehicle and I don't know within what exact speeds it can handle but this sounds just from general knowledge this sounds like a speed that's not dangerous that's not beyond the capacity of a State Patrol vehicle or a BMW." RP at 114. A jury found Marco Pindter-Bonilla guilty of reckless driving and possession of the controlled substance MDMA.

## LAW AND ANALYSIS

Marco Pindter-Bonilla grounds all assignments of error on ineffective trial counsel. The Sixth Amendment to the United States Constitution guarantees the right to legal counsel in criminal trials. The Washington Constitution also grants an accused, in a criminal prosecution, the right to appear by counsel. CONST. art. I, § 22. Washington courts have not extended the protections of the state constitution beyond the protections afforded by the United States Constitution. Instead, state decisions follow the teachings and rules announced in the United States Supreme Court's seminal decision of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). An accused is entitled to more than a lawyer who sits next to him in court proceedings. In order to effectuate the purpose behind the constitutional protection, the accused is entitled to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. at 688.

Under *Strickland*, courts apply a two-prong test, whether (1) counsel's performance failed to meet a standard of reasonableness and (2) actual prejudice resulted

8

from counsel's failures. *Strickland*, 466 U.S. at 690-92. To prevail on his claim, a defendant must satisfy both prongs of the ineffective assistance of counsel test. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996), *overruled on other grounds by Carey v. Musladin*, 549 U.S. 70, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006). If one prong of the test fails, we need not address the remaining prong. *Hendrickson*, 129 Wn.2d at 78.

To prevail on an ineffective assistance of counsel claim, the defendant must show that, after considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Such a standard echoes the standard of care applied in a civil legal malpractice suit. *Hizey v. Carpenter*, 119 Wn.2d 251, 261, 830 P.2d 646 (1992). A claim that trial counsel was ineffective does not survive if trial counsel's conduct can be characterized as legitimate trial strategy or tactics. *State v. Grier*, 171 Wn.2d 17, 246 P.3d 1260 (2011); *Hendrickson*, 129 Wn.2d at 77-78.

We give great deference to trial counsel's performance and begin our analysis with a strong presumption that counsel was effective. *Strickland*, 466 U.S. at 689; *McFarland*, 127 Wn.2d at 335; *Grier*, 171 Wn.2d at 33. To rebut this presumption, a defendant must demonstrate trial counsel's conduct could not be characterized as a legitimate trial strategy or tactic. *Grier*, 171 Wn.2d at 33; *Hendrickson*, 129 Wn.2d at 77-78. The relevant question is not whether counsel's choices were strategic, but whether they were

reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000).

To satisfy the prejudice prong, the defendant must establish that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694; *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987). In assessing prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to the law. *Strickland*, 466 U.S. at 694-95.

Unwitting Possession Instruction and Investigation

Marco Pindter-Bonilla claims his counsel failed to investigate and should have investigated an unwitting possession defense. To convict a defendant of unlawful possession of a controlled substance, the State must prove beyond a reasonable doubt that he or she possessed a controlled substance without a valid prescription or other authorization. RCW 69.50.4013(1). Washington adopted the affirmative defense of unwitting possession in drug possession cases in order to ameliorate the harshness of the strict liability offense. *State v. Bradshaw*, 152 Wn.2d 528, 538, 98 P.3d 1190 (2004); *State v. Staley*, 123 Wn.2d 794, 799, 872 P.2d 502 (1994); *State v. Cleppe*, 96 Wn.2d 373, 380-81, 635 P.2d 435 (1981). The doctrine permits a defendant to avoid liability if

she or he can prove by a preponderance of the evidence that she or he did not know the substance was in her or his possession or did not know the nature of the substance. *State v. Deer*, 175 Wn.2d 725, 735, 287 P.3d 539 (2012), *cert. denied*, 133 S. Ct 991, 184 L. Ed. 2d 770 (2013).

Effective assistance requires a defense counsel, at a minimum, conduct a reasonable investigation enabling counsel to make informed decisions about how best to represent the client. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 722, 101 P.3d 1 (2004); *In re Pers. Restraint of Brett*, 142 Wn.2d 868, 873, 16 P.3d 601 (2001). A reasonable investigation includes all reasonable lines of defense. *Davis*, 152 Wn.2d at 721. This court examines the reasonableness of an attorney's action or inaction according to what the attorney knew at the time the attorney made his or her choices. *Davis*, 152 Wn.2d at 722. What an attorney knew or investigated is difficult to determine on direct appeal. Where, as here, the claim is brought on direct appeal, the reviewing court will not consider matters outside the trial record. *McFarland*, 127 Wn.2d at 335.

The record is silent as to what Marco Pindter-Bonilla's counsel knew and investigated. Absent some evidence demonstrating counsel's knowledge or investigation, Pindter-Bonilla cannot meet his burden and overcome this court's strong presumption that counsel was effective. *McFarland*, 127 Wn.2d at 335.

Marco Pindter-Bonilla invites this court to read counsel's closing as an admission that counsel had not previously considered requesting an unwitting possession

11

instruction. Counsel began his closing by arguing the "State has not produced all of the evidence that you [the jury] need . . . for a conviction." RP at 111. In arguing that the State failed to meet its burden, counsel expressed his concern that a person could get in trouble for possessing a substance he or she did not know about. The prosecutor objected and defense counsel continued, "I think it matters to know is this thing primarily a controlled substance or something else?" RP at 112. While the prosecutor objected on the ground that counsel had not previously requested an unwitting possession instruction, context suggests defense counsel was arguing a trace quantity of MDMA would not constitute possession of a controlled substance—a proposition this court previously rejected. *State v. Smith*, 174 Wn. App. 359, 298 P.3d 785 (2013). But even if counsel argued Pindter-Bonilla unwittingly possessed MDMA, there is no evidence to support the inference that counsel had not previously investigated the viability of such a defense.

Regardless of whether counsel realized unwitting possession could be a defense for the first time during closing arguments, this court examines counsel's actions according to what he knew at the time he made the decision. *Davis*, 152 Wn.2d at 722. The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. *Strickland*, 466 U.S. at 691. Based on those statements or actions, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986).

12

Marco Pindter-Bonilla consistently stated he knew the bag he retrieved contained ecstasy. When Trooper Farmer pulled the bag out of his jeans, Pindter-Bonilla immediately said it was ecstasy. Pindter-Bonilla testified at trial the bag contained ecstasy. He "could tell right away that it was ecstasy" because he "know[s] a lot of . . . young people [at high school that] do drugs." RP at 79. Given Pindter-Bonilla's statements, trial counsel had no notice, actual or constructive, that unwitting possession could be a viable defense. Assuming he made a decision not to investigate further, that decision was objectively reasonable.

We render the same decision with regard to Marco Pindter-Bonilla's claim that his attorney should have demanded an unwitting possession jury instruction. Failure to request an instruction on a potential defense can constitute ineffective assistance of counsel. *In re Pers. Restraint of Hubert*, 138 Wn. App. 924, 929, 158 P.3d 1282 (2007). To prevail on a claim of ineffective assistance based on counsel's failure to propose a jury instruction, Pindter-Bonilla must show that (1) defense counsel's failure to request the instruction was not a legitimate tactical decision and (2) had counsel requested the instruction, the trial court likely would have given it. *State v. Powell*, 150 Wn. App. 139, 154-55, 206 P.3d 703 (2009).

When the defense of unwitting possession is raised, the defendant's knowledge is directly relevant to the defense of unwitting possession. *City of Kennewick v. Day*, 142 Wn.2d 1, 11, 11 P.3d 304 (2000). A defendant is entitled to a jury instruction supporting

13

his theory of the case only if there is substantial evidence in the record supporting his theory. *Powell*, 150 Wn. App. at 154. Because Pindter-Bonilla conceded knowledge of the nature of the pill, he could not win on an unwitting possession defense and his counsel did not fail him by omitting a request for an unwitting possession instruction.

Because we conclude that trial counsel provided effective assistance with regard to a defense of unwitting possession, we do not address whether Marco Pindter-Bonilla was prejudiced.

Reckless Driving

Marco Pindter-Bonilla argues his trial counsel's defense against reckless driving was ineffective for a variety of reasons. At times, his reasoning is difficult to discern because his argument lacks a clear organizational structure and he conflates the deficient performance and prejudice prongs. Nonetheless, his claims fail because they stem from a misreading of the record or because he suffered no prejudice.

First, Pindter-Bonilla claims his trial counsel misstated the law in his closing argument and he suffered prejudice per se as a result. A defendant is entitled to a correct statement of the law. *Thomas*, 109 Wn.2d at 228. But counsel correctly stated the law. Pindter-Bonilla contends his counsel added "of another" to the RCW prohibiting reckless driving. He misreads the report of proceeding. Counsel did not define reckless driving. Rather, counsel defined "wanton," an element of reckless driving, which he quotes from

14

the jury instructions. RP at 113; CP at 49. Additionally, the court correctly instructed the jury on the law for reckless driving.

Second, Marco Pindter-Bonilla contends counsel's performance was deficient because he admitted to not knowing a lot about cars during his closing. Counsel's statement appears as a clever comment preceding his explanation that as a high performance vehicle, Pindter-Bonilla's BMW could handle being driven at 112 m.p.h. without being dangerous. In that light, counsel's argument was reasonable because it was the only way to attack the charge, since Pindter-Bonilla admitted he sped. But even in the light Pindter-Bonilla cast upon the comment, Pindter-Bonilla does not explain why counsel must have an extensive knowledge of cars to provide effective assistance or how counsel's deficiency prejudiced Pindter-Bonilla.

Third, Marco Pindter-Bonilla argues his counsel's assistance was ineffective because he failed to object to the State's characterization of the standard for reckless driving as dangerous driving. A defendant alleging ineffective assistance must show that the trial court would likely have sustained the objection. *In re Det. of Strand*, 139 Wn. App. 904, 912, 162 P.3d 1195 (2007), *aff'd*, 167 Wn.2d 180, 217 P.3d 1159 (2009); *In re Det. of Stout*, 159 Wn.2d 357, 377, 150 P.3d 86 (2007). But the trial court would not have sustained any objection because the State did not change the standard. The State argued Pindter-Bonilla's speed constituted reckless driving because it was dangerous. The statement did not change the standard and, as a result, there was nothing to which

counsel could object. Moreover, the trial court defined reckless driving in its instruction to the jury. This court presumes juries follow instructions. *State v. Johnson*, 124 Wn.2d 57, 77, 873 P.2d 514 (1994). Therefore, the instruction cured any error.

Fourth, Marco Pindter-Bonilla argues his counsel's misunderstanding of the conduct that can constitute reckless driving evidences his deficient performance. In a motion to suppress, counsel incorrectly argued an officer could not arrest someone solely for speeding. Contrary to counsel's representations, RCW 46.61.465 specifies that excessive speeding is prima facie evidence of reckless driving, which is an arrestable offense. Pindter-Bonilla contends his counsel's misstatement violates the rule entitling a defendant "to a correct statement of the law." *Thomas*, 109 Wn.2d at 228. In *Thomas*, counsel proposed jury instructions that misstated the law. Here, the court properly instructed the jury and the statements Pindter-Bonilla complains of occurred at a CrR 3.5 hearing. Counsel's incorrect representation, therefore, could not have prejudiced him before the jury. Nor did the misrepresentation harm his motion to suppress. Even if trial counsel correctly stated the law, the outcome would not have been any different.

Fifth, Marco Pindter-Bonilla contends his counsel provided ineffective assistance by failing to fully investigate the radar detectors' reliability. He argues his counsel should have called expert witnesses or subpoenaed inspection records to verify the detectors were accurate. "Generally, a decision to call or not to call a witness is a matter of legitimate trial tactics and will not support a claim of ineffective assistance of

16

counsel." *State v. Warnick*, 121 Wn. App 737, 746, 90 P.3d 1105 (2004) (citing *Thomas*, 109 Wn.2d at 230). A defendant can overcome this by a showing that counsel failed to conduct appropriate investigations. *Thomas*, 109 Wn.2d at 230. Pindter-Bonilla fails to reference any part of the record that suggests counsel failed to conduct appropriate investigations.

In any case, a counsel's decision, if reasonable, can render further investigations unnecessary. *Kimmelman*, 477 U.S. at 384. Ostensibly, counsel chose not to call expert witnesses because it would be fruitless. Troopers Jay Farmer and Mel Sterkel testified that they calibrated their equipment at the beginning of their shifts, that they routinely gauge speeds by eye, and that, in their experience, they could tell the car exceeded 100 m.p.h. In light of this evidence, counsel's decision not to seek expert testimony or inspection records was reasonable.

Even if counsel's decision was unreasonable, Marco Pindter-Bonilla cannot demonstrate any prejudice. Pindter-Bonilla admitted to going over 100 m.p.h. Given his admission, Pindter-Bonilla cannot establish a reasonable probability that the outcome would have been different had defense counsel called for other expert testimony or inspection records.

Last, Marco Pindter-Bonilla contends his counsel provided ineffective assistance when he failed to explore the discrepancy between his and Trooper Jay Farmer's

17

testimony. But again, Pindter-Bonilla fails to explain how this performance was deficient or how he was prejudiced.

Marco Pindter-Bonilla testified he pulled over as soon as he passed Trooper Farmer. Trooper Farmer testified that he paced Pindter-Bonilla before pulling him over, in order to confirm what his radar told him. Pindter-Bonilla argues the failure to raise this discrepancy in closing arguments constituted ineffective assistance. In the context of closing arguments, this court considers counsel's assistance effective if counsel adequately conveys the defendant's position. *State v. Fraser*, 170 Wn. App. 13, 30, 282 P.3d 152 (2012). Pindter-Bonilla's defense never alleged Trooper Farmer lied; Pindter-Bonilla admitted to driving over 100 m.p.h.; and whether Pindter-Bonilla pulled over immediately is not an element of the crimes the State charged. Raising the discrepancy would do nothing other than unnecessarily put Pindter-Bonilla's word at odds with a police officer's.

Trial counsel effectively represented Pindter-Bonilla's interest against a reckless driving charge. The fact that a jury convicted him does not reflect on counsel's deficiencies, but rather on Pindter-Bonilla's irresponsible decision to drive over 100 m.p.h. without regard for the safety of others.

English Fluency

Finally, Marco Pindter-Bonilla complains his counsel failed to investigate his ability to understand English. This failure, he argues, prejudiced him in two ways. First,

18

the court admitted statements he made after Trooper Farmer advised him of his *Miranda* rights. Second, he was unable to participate in his own defense.

This issue, like the one before it, asks whether trial counsel adequately investigated in preparing for trial. In judging the defense's investigation, this court looks to "counsel's perspective at the time," and gives a "heavy measure of deference to counsel's judgments." *Rompilla v. Beard*, 545 U.S. 374, 381, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005); *Strickland*, 466 U.S. at 689, 691. The review of counsel's perspective is limited to the trial court record. *McFarland*, 127 Wn.2d at 335.

Nothing in the record indicates trial counsel failed to investigate Marco Pindter-Bonilla's ability to understand English. Pindter-Bonilla asks this court to infer that his counsel failed to investigate based on his testimony. The testimony, however, fails to show an inability to understand English.

When called to the witness stand, Pindter-Bonilla stated:

> First before we start, I want to apologize for my language. I mean my pronunciation is not perfect. If I myself spell something or I cannot express myself let me know. You can like you can reask me questions and I can try to answering then like trying to explain better.

RP at 77. Later on, he expressed difficulty understanding counsels' questions and conveying his answers.

While Pindter-Bonilla's English is not perfect, a reading of his testimony shows he is proficient. More importantly, his opening statement equally supports the notion that

19

counsel investigated his ability to understand English, and they decided together he could testify without an interpreter. Without additional evidence attesting to their meetings or trial counsel's actions, Pindter-Bonilla cannot overcome the presumption that counsel performed adequately.

This court need not address whether Pindter-Bonilla suffered prejudice since he fails to establish his counsel's performance was deficient.

## CONCLUSION

We affirm Marco Pindter-Bonilla's convictions for reckless driving and possession of a controlled substance.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Korsmo, J.