[No. 58680-7-I. Division One. June 4, 2007.]

*In the Matter of the Personal Restraint of* NICOLAS HUBERT, *Petitioner.*

*David Allen* (of *Allen Hansen & Maybrown, PS*), for petitioner.

*David S. McEachran, Prosecuting Attorney*, for respondent.

¶1 ELLINGTON, J. — Where counsel in a criminal case fails to advance a defense authorized by statute and there is evidence to support the defense, counsel's performance is deficient. Here, that deficient performance prejudiced Nicolas Hubert. We grant his personal restraint petition, vacate the conviction, and remand for a new trial.

## BACKGROUND

¶2 On May 15, 2004, Noel Wood joined her roommate Sandy Sallee and their friend Jenny Hale for a "girls' night out," drinking and dancing at several bars in Bellingham. Towards the end of the evening, the women met Nicolas Hubert, who joined them at a table. As the group left the bar, Sallee invited Hubert to return to the house she shared with Wood for another drink. Sallee and Hubert drove to the house together. Hale drove Wood home and dropped her off but did not come in.

¶3 At the house, Wood shared a beer with Hubert and Sallee. At trial, she testified that she may also have smoked marijuana with them. She grew tired and retreated to her bedroom, telling both Sallee and Hubert that she was tired and going to sleep. Eventually, Sallee also went to bed, and invited Hubert to sleep on their couch rather than drive home.

¶4 In the early morning hours, Hubert entered Wood's bedroom and initiated a sexual encounter. Their accounts of this event differ greatly but are not wholly inconsistent.

¶5 Hubert testified that Wood was friendly and flirtatious with him throughout the evening and seemed recep-

tive to a sexual relationship. He testified he knocked, entered the bedroom, and lay down beside Wood in bed. Wood rolled over and said "Hi Neeco," using the nickname by which Hubert had introduced himself.[1] The two kissed and fondled one another. Hubert removed his own pants. He asked Wood to take her pants off, and she began to remove them, allowing Hubert to assist her. Hubert anticipated that they would have sex, but before he penetrated her, Wood jumped out of bed and told him "I'm too drunk to do this, Neeco. And I have a boyfriend and what we did was really wrong."[2] Hubert tried to comfort Wood, who appeared to be upset, but she left the house. Hubert remained in bed in Wood's room. When Wood returned, he tried to reopen conversation with her. She rebuffed him and went into Sallee's room. Hubert left the house when ordered out by Sallee some 30 minutes later.

¶6 Wood testified that she and Hubert did not interact privately during the evening, and that she did not flirt with him. After going to sleep, she awoke to find Hubert penetrating her and her clothing removed. She testified that she had been dreaming that Ms. Hale was kissing her, and that she was telling Hale that she did not want to kiss her. She told Hubert she had a boyfriend, pushed him off of her, got out of bed, and left the house to go to her boyfriend's. Returning about an hour and a half later, she discovered Hubert still in her room. She awoke Sallee, described to her what had happened, and Sallee asked Hubert to leave the house, which he did.

¶7 Hubert was charged with second degree rape under that part of the statute criminalizing sex with a person who is incapable of consent by reason of being physically helpless.[3] The trial court instructed the jury on the charged crime and on several lesser included crimes, including

---

[1] Report of Proceedings (RP) (Apr. 5, 2005) at 200.

[2] *Id.* at 203.

[3] RCW 9A.44.050(1)(b).

attempted second degree rape. The jury convicted Hubert of attempted second degree rape.

¶8 Hubert filed, and later withdrew, a direct appeal.[4] He filed this personal restraint petition shortly thereafter.

## ANALYSIS

■■ ¶9 To obtain relief on collateral review based on a constitutional error, the petitioner must demonstrate by a preponderance of the evidence that he was actually and substantially prejudiced by the error.[5] Hubert claims violation of his constitutional right to effective assistance of counsel. To prevail on the claim, Hubert must show both deficient performance and resulting prejudice.[6] The first element is met by showing counsel's performance was not reasonably effective under prevailing professional norms.[7] The second element is met by showing a reasonable probability that, but for counsel's unprofessional errors, the result would have been different.[8]

■■ ¶10 "There is a strong presumption that defense counsel's conduct is not deficient."[9] And generally, legitimate trial strategy cannot serve as the basis for a claim of ineffective assistance of counsel.[10] But strategy must be based on reasoned decision making:

[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchal-

---

[4] We have reviewed the record from Hubert's direct appeal (No. 56248-7-I) in considering this case.

[5] *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671-72, 101 P.3d 1 (2004).

[6] *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996).

[7] *Strickland*, 466 U.S. at 694.

[8] *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987) (quoting *Strickland*, 466 U.S. at 694).

[9] *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004) (citing *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995)).

[10] *State v. Aho*, 137 Wn.2d 736, 745-46, 975 P.2d 512 (1999).

lengeable; and choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.[11]

### Deficient Performance

¶11 It is a defense to a charge of rape in the second degree that the defendant reasonably believed the person was not mentally incapacitated.[12] The defendant bears the burden of proof by a preponderance of the evidence.[13]

¶12 In addition to the evidence previously described, Hubert testified that he believed Wood was awake during the entire encounter. Both Hubert and Wood testified that Hubert stopped physical advances as soon as Wood cut off the encounter, and that he remained in Wood's bedroom for hours following the incident.

¶13 Despite this evidence, Hubert's attorney did not raise or argue the "reasonable belief" defense. Nor did he request an instruction thereon. Failure to request an instruction on a potential defense can constitute ineffective assistance of counsel.[14]

¶14 Legitimate trial strategy cannot serve as the basis for a claim of ineffective assistance. But Hubert's attorney himself attests that his conduct resulted from the fact that he "was not familiar" with the statutory defense until Hubert's appellate counsel brought it to his attention.[15] An attorney's failure to investigate the relevant statutes under

---

[11] *Strickland*, 466 U.S. at 690-91.

[12] RCW 9A.44.030(1).

[13] *Id.*

[14] *Thomas*, 109 Wn.2d at 229.

[15] Br. in Supp. of Pers. Restraint Pet., Decl. of Stuart Follis at 4.

which his client is charged cannot be characterized as a legitimate tactic.[16]

¶15 Hubert's attorney had only to review the section headings of chapter 9A.44 RCW, where the section is prominently labeled "Defenses to prosecution under this chapter," or the pattern jury instructions for the charged offense. Comments to the instruction defining second degree rape and the instruction outlining the elements of the crime explicitly reference the instruction on the statutory defense.[17] Counsel's failure to discover and advance the defense was plainly deficient performance.

*Prejudice*

¶16 Hubert must also show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[18] A reasonable probability "is a probability sufficient to undermine confidence in the outcome."[19] The State contends Hubert was not prejudiced because the attempt instructions addressed Hubert's intent to have intercourse with a person incapable of consent.

¶17 The parties devote extensive discussion to *State v. Chhom*[20] and *State v. DeRyke*,[21] both of which discuss the specific intent requirement of attempted rape. Neither, however, establishes that the mens rea for attempted rape

---

[16] *Aho*, 137 Wn.2d at 745-46 (attorney did not research the effective dates of the relevant statutes, resulting in jury instructions that "allow[ed] the possibility of a conviction" for acts occurring before the relevant statute's effective date); *Thomas*, 109 Wn.2d at 229 ("A reasonably competent attorney would have been sufficiently aware of relevant legal principles to enable him or her to propose an instruction based on pertinent cases.").

[17] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 41.01-.02, at 520-24 (2d ed. 1994).

[18] *Strickland*, 466 U.S. at 694.

[19] *Id.*

[20] 128 Wn.2d 739, 911 P.2d 1014 (1996) (in conviction for attempted rape of a child, required intent is to commit the criminal conduct of intercourse, child's age remains a strict liability element).

incorporates the actus reus elements of the completed crime (here, that the victim is physically helpless).

¶18 As charged here, second degree rape occurs when the victim is incapable of consent by reason of being physically helpless or mentally incapacitated.[22] The court defined attempted second degree rape as follows:

A person commits the crime of attempted Rape in the Second Degree when, with intent to commit that crime, he or she does any act which is a substantial step toward the commission of that crime.[23]

¶19 The to convict instruction on attempted second degree rape provided as follows:

To convict the defendant of the crime of attempted Rape in the Second Degree, each of the following elements must be proved beyond a reasonable doubt:

(1) That on or about the 16th day of May, 2004, the defendant did an act which was a substantial step toward the commission of Rape in the Second Degree;

(2) That the act was done with the intent to commit Rape in the Second Degree.[24]

¶20 The State contends that because the attempt definition required the jury to find that Hubert took a substantial step with the intent to commit rape in the second degree, it necessarily found that he intended to have intercourse with Wood knowing that she was sleeping. We disagree. This is one possible reading of the verdict, but not an inevitable interpretation. Rather, the State's argument serves to emphasize the degree of prejudice occasioned by the missing defense.

¶21 There is no intent element for rape. To commit an attempt, however, the defendant must intend to commit the

---

[21] 149 Wn.2d 906, 73 P.3d 1000 (2003) (intent element for attempted first degree rape is intent to achieve intercourse by forcible compulsion, and thus varies from intent for lesser degrees of rape).

[22] RCW 9A.44.050(1)(b).

[23] Resp. Br., App. C., Instruction 13.

[24] *Id.*, Instruction 14.

crime charged. Here, that means the defendant must intend to have intercourse with a victim incapable of consent. The jury was so instructed. But this did not illuminate for the jury whether the defendant must be found to intend intercourse with a person he knows to be helpless, or merely intercourse with a person who happens to be helpless whether or not the defendant realizes it. The jury was unaware that if Hubert reasonably believed Wood had capacity to consent, his belief constituted a defense to the charge. The jury thus had no way to understand the legal significance of the evidence supporting the reasonableness of Hubert's belief that Wood was awake and capable of consenting to his advances.[25] The attempt instruction does nothing to cure the absence of the reasonable belief instruction.

¶22 Where defense counsel fails to identify and present the sole available defense to the charged crime and there is evidence to support that defense, the defendant has been denied a fair trial. Hubert's personal restraint petition is granted. We vacate Hubert's conviction and remand for a new trial.

AGID and Cox, JJ., concur.

---

[25] We reject the State's contention that counsel's closing arguments resolved the infirmity in the jury instructions. Neither attorney clarified the intent requirement for attempt beyond the definition given in the instructions. In any event, failure to instruct the jury on a critical issue or element is not cured by discussion in closing arguments. *State v. Jackson*, 62 Wn. App. 53, 59-60, 813 P.2d 156 (1991) (failure to instruct on intent element where defense theory involved absence of intent).