# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51389-7-II |
| Respondent, | |
| v. | |
| TANNER JAMY SCOTT BIRDSALL, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, P.J. — Tanner Birdsall appeals his conviction for rape in the second degree. The charge arose after a night in which Birdsall, his friend, and the victim, SC, drank alcohol, and then Birdsall and his friend sexually assaulted SC.

Birdsall argues that the trial court abused its discretion when it denied his motions for a mistrial and for a new trial. He also contends that the prosecutor committed misconduct and that he received ineffective assistance of counsel.

We affirm.

## FACTS

The State charged both Birdsall and Joel Krebs with rape in the second degree of SC. The State tried Birdsall and Krebs separately.[1]

---

[1] We affirmed Krebs's conviction. *State v. Krebs*, No. 49396-9-II (Wash. Ct. App. Dec. 4, 2018), http://www.courts.wa.gov/opinions/, *review denied*, 193 Wn.2d 1004 (2019).

I.    SC'S TESTIMONY

In high school, SC dated Krebs. She considered Birdsall a good friend. Shortly after high school, SC and Krebs had a contentious break up. SC then moved away, but she would often return home to see friends and family. When seeing friends, SC would often run into Krebs, and eventually, they became cordial.

On one visit, SC agreed to hang out with Krebs and Birdsall. By the time SC arrived at Birdsall's house, Krebs and Birdsall had set up a beer pong table. They also provided Mike's Hard Lemonades for SC. After she had one drink, SC decided to stay the night, knowing she could sleep on the couch. SC, Krebs, and Birdsall then began playing beer pong. At one point, the game changed to strip beer pong.

Later in the evening, SC walked out of the bathroom and fell, but either Krebs or Birdsall caught her and carried her to Birdsall's bedroom. She had limited memory at this time. However, SC believes that she had finished her third alcoholic lemonade and started her fourth.

When SC awoke in the morning, her whole body, including her vagina, was sore. When SC asked Krebs and Birdsall about it, they laughed and told her that she had fallen and hit her crotch against the corner of the couch. Their story did not make sense to SC. She asked Krebs and Birdsall whether either had sex with her. They both denied that they had.

When SC arrived at her mom's home, she felt very ill and vomited until about noon. SC began to remember bits and pieces from the previous evening.

Fearing what may have happened, SC called her mom and asked her to come home from work. SC and her mom decided that she should go to the hospital. By the time the nurse conducted a sexual assault evaluation at the hospital, over 24 hours had passed since the time SC had been drinking with Krebs and Birdsall.

Over time, more memories came back to SC. She remembered that, after she fell and was taken to the bedroom, Krebs and Birdsall laid on the bed next to her. They were talking to her, touching her, and eventually began taking her remaining clothes off. Because of her intoxication, SC could not move or speak.

SC remembered Birdsall having sexual intercourse with her while Krebs touched her body. At some point, Krebs left the bedroom, and then Birdsall left. After Birdsall left, Krebs reentered and began having sexual intercourse with SC.

The morning after the sexual assault evaluation, SC talked to the police. After she gave her statement, SC called Birdsall, and the police recorded the conversations. SC also confronted Birdsall in person and recorded their conversation. The jury heard the recorded conversations. Birdsall did not object to the admission of the tapes.

During one conversation, SC stated that she was "more sick than [she] should have been from just having Mike's" and also stated that she "left [her] drink alone." Ex. 4, *audio recording*, at 8 min. through 8 min., 23 sec. In response, Birdsall asked SC whether she was suggesting that he drugged her. SC said she did not know. Birdsall said he did not drug her.

II.    BIRDSALL'S STATEMENTS

After being arrested, Birdsall gave an oral and written statement to the police. They are as follows.

When they were playing beer pong, SC asked whether Krebs and Birdsall had ever played strip beer pong. Krebs and Birdsall said no but asked if she wanted to play. SC initially said no but eventually agreed to play. Throughout the night, SC had fun.

SC eventually became too intoxicated and began falling down. As a result, Krebs carried her to Birdsall's bedroom so she could lay down. Birdsall got a bowl for SC in case she vomited, which she later did. After a short while, SC sat up and said she felt fine.

After they sat and talked for a period of time, SC and Krebs started kissing, and then Birdsall began kissing her stomach. He took her underwear off. Birdsall eventually began having intercourse with SC. SC did not tell Birdsall to stop. At one point, the stereo came on and played a song that caused SC to begin crying. Birdsall asked why she was crying, and SC stated that the song was her and Krebs's song from when they dated. When SC began crying, Birdsall stopped having intercourse with her. At no point in time was SC unconscious.

Birdsall said that the morning after the incident, he told SC that they did not have sex because Krebs initially denied it. Birdsall simply went along with Krebs. Krebs and Birdsall were concerned about their girlfriends finding out.

III.    DRUG EVIDENCE

Before trial, Birdsall filed a motion in limine to exclude "[e]vidence that [SC] may have ingested prescription drugs." Clerk's Papers (CP) at 53. The court granted the motion. The court's order stated: "the State shall not introduce any evidence or make any argument related to the assertion that . . . Birdsall introduced or provided prescription drugs to [SC]. References made in the . . . 'confrontation tape' are permissible."[2] CP at 79.

During trial, the prosecutor asked the State's toxicologist, Lyndsey Knoy, whether she tested SC's "blood in this case for both alcohol and drugs." 5 Report of Proceedings (RP) at 897. Knoy responded that she had and that she had detected neither. The prosecutor then asked: "With the information you just provided, if the blood was taken 24 hours after, would this be results that

---

[2] The "confrontation tape" is the recorded conversations SC had with Birdsall.

you would expect to see regardless of what a BAC level would be or drugs in the system?" 5 RP at 897. Birdsall objected, and the court sustained the objection. The prosecutor followed up: "So were the results what you would . . . have expected based on [a 24-hour] time frame." 5 RP at 897. Birdsall again objected, and the court sustained the objection. The prosecutor then asked: "And if . . . bottles of alcohol were collected in this case, but they were empty, they were dry . . . would there have been any ability for the lab to have tested those for any substance that might have been there or anything like that?" 5 RP at 898. Knoy responded, "No. We cannot test empty anything." 5 RP at 898.

Birdsall moved for a mistrial based on the prosecutor's line of questioning. The court denied the motion. The court stated that it had concerns with the line of questioning and would allow Birdsall to make a post-verdict motion if he "want[ed] to research the law and make a motion." 5 RP at 909. However, the court did not want to grant a mistrial because it wanted to "see what the verdict is." 5 RP at 910.

IV.     BLOOD ALCOHOL CONTENT EVIDENCE

Knoy testified that Widmark's equation estimates a person's blood alcohol content (BAC). It relies on the person's sex and weight, and the amount and type of alcoholic beverages consumed. Widmark's equation also requires using a rho factor. Knoy used a rho factor of 0.55 for SC, which was an estimate. This estimate is not accurate for all women.

Using Widmark's equation, Knoy estimated SC's BAC based the facts presented and concluded that her BAC was between 0.20 and 0.26. Knoy estimated that SC's BAC increased by 0.043 per drink.

Knoy said that during an alcoholic blackout, people around the person would not necessarily know that the person was in an alcoholic blackout. Knoy clarified that a person would "appear normal drunk." 5 RP at 922.

Birdsall's toxicologist, David Predmore, also used Widmark's equation to estimate SC's BAC. When discussing why he did not use 0.55 for SC's rho factor, Predmore explained that alcohol is water soluble, not fat soluble, and muscle stores water. Therefore, more muscle per pound equates to a higher rho factor because there is a greater volume of water for the alcohol to disperse into. Additionally, according to Predmore, a rho factor of 0.55 is only accurate for women who tend to have more fat per pound than the average woman. Because SC had an athletic build, Predmore used a rho factor that reflected her build. While it is not entirely clear from the record, it appears that Predmore used approximately 0.61 as SC's rho factor. As a result, Predmore estimated that SC's BAC increased by 0.040 per drink.

Predmore discussed how Knoy's calculations were incorrect because she did not account for metabolism from the time someone consumed their first drink. According to Predmore, a more accurate prediction for SC's BAC after three Mike's Hard Lemonades over two hours was 0.09, and five drinks over four hours was 0.14.

V.    CLOSING ARGUMENT

During closing argument, the prosecutor stated:

> The facts of this case are what every girl fears. What every woman fears. What every parents worse nightmare is [sic]. We talk to our girls about be careful how you dress, right. Be careful how you act, what you say. We tell our girls don't give boys the wrong impression. And why do we do that? The potential juror we heard from the other day said it right, because there's a double standard[].

5 RP at 973. Birdsall objected based on the prosecutor's use of evidence outside the record. The court sustained the objection. The prosecutor continued, and she discussed how a woman cannot

6

consent and does not consent to sexual intercourse when she is so drunk that she cannot walk and when she is so drunk that she is vomiting. She next stated that "there's a double standard, [but] we don't blame the victim. That's not what we do." 5 RP at 974.

The prosecutor also discussed how Predmore used the wrong rho factor for calculating SC's BAC because he made her a heavy-set woman.

In his closing argument, Birdsall focused on the fact that SC's story was not credible. He argued that SC had in fact consented to the sexual encounter and that she was not as drunk as she now claimed. Birdsall also discussed how SC made sexual advances on him, how SC flirted with him, how SC was "cheery" when they began kissing on the bed, and how she never denied that she consented. 5 RP at 1001.

On two occasions during her rebuttal, the prosecutor argued that Birdsall was "victim blaming." 5 RP at 1005, 1007.

VI.     MOTION FOR NEW TRIAL

After the jury convicted Birdsall of rape in the second degree, he moved for a new trial pursuant to CrR 7.5. He based the motion on the prosecutor's line of questioning regarding drug evidence. The court asked whether Birdsall interviewed any jurors about whether they thought drugs potentially explained SC's severe intoxication. Birdsall said he had not. The court then reflected that the jury did not deliberate for a long period of time and stated to Birdsall:

> Well, without you talking to a juror, my impression was they were thoroughly convinced that he committed the alleged crime and didn't need much time to come to that conclusion. . . .
>          . . . .
>          . . . I mean you would have been welcome to go and talk to any juror and your motion would have been much stronger.

5 RP at 1023.

The court denied the motion, reasoning that, without evidence that the prosecutor's line of questioning affected a juror's decision, Birdsall was "asking [it] to speculate that they even talked about [drugs]." 5 RP at 1024.

VII.    SENTENCING

The State asked for an identical sentence to the sentence Krebs had received. Birdsall asked the court to sentence him to the low end of the standard sentencing range.

Birdsall, his mom, and his aunt spoke on his behalf. In asking the court to give him the lowest possible sentence, Birdsall's mom stated that Birdsall "is a young man" who had goals and the work ethic to achieve them. RP (Dec. 22, 2017) at 6.

In rendering its decision, the court recognized that "[Birdsall] is young, and he can make up his mind to change." RP (Dec. 22, 2017) at 9. The court sentenced Birdsall to the same sentence Krebs received, 90 months. Birdsall appeals.

ANALYSIS

I.    MOTION FOR MISTRIAL

Birdsall argues that the trial court abused its discretion when it denied his motion for a mistrial based on the prosecutor's line of questioning regarding drug evidence. We disagree.

We review a trial court's decision to deny a request for a mistrial for an abuse of discretion. *State v. Lewis*, 130 Wn.2d 700, 707, 927 P.2d 235 (1996). A "court should grant a mistrial only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly." *Lewis*, 130 Wn.2d at 707. The trial court "is best suited to judge the prejudice of a statement." *Lewis*, 130 Wn.2d at 707.

Here, the trial court did not abuse its discretion in denying Birdsall's motion for a mistrial because the prosecutor's line of questioning did not violate the motion in limine. The order

granting the motion in limine stated: "the State shall not introduce any evidence or make any argument related to the assertion that . . . Birdsall introduced or provided prescription drugs to [SC]. References made in the . . . 'confrontation tape' are permissible." CP at 79.

During the line of questioning Birdsall identifies as improper, the State did not introduce evidence or make arguments related to the assertion that Birdsall provided SC with prescription drugs. Instead, the line of inquiry addressed the lack of evidence and the evidence introduced on the confrontation tape. Thus, the prosecutor did not violate the motion in limine.

II.    MOTION FOR NEW TRIAL

Birdsall argues that the trial court abused its discretion when it denied his motion for a new trial based on the prosecutor's line of questioning regarding drug evidence. He contends that the court denied his motion because it relied on an erroneous view of the law. We agree that the trial court relied on an erroneous legal interpretation, but we affirm the denial of the motion because the prosecutor did not violate the motion in limine.

A trial court may grant a new trial "when it affirmatively appears that a substantial right of the defendant was materially affected . . . [by m]isconduct of the prosecution." CrR 7.5. To show prosecutorial misconduct, the "defendant must show 'that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.'" *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008) (quoting *State v. Hughes*, 118 Wn. App. 713, 727, 77 P.3d 681 (2003)).

In deciding a CrR 7.5(a)(2) motion based upon alleged prosecutorial misconduct, "the trial court applies the same standard as an appellate court reviewing such claims." *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006). That is, the trial court determines whether the defendant has met his burden to show that the prosecutor's comments were improper and prejudicial.

*McKenzie*, 157 Wn.2d at 52. We then review the trial court's determination for an abuse of discretion. *McKenzie*, 157 Wn.2d at 51.

A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or for untenable reasons, or if no reasonable judge would have reached the same conclusion. *State v. Emery*, 174 Wn.2d 741, 765, 278 P.3d 653 (2012); *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). "A trial court necessarily abuses its discretion if it bases its ruling on an erroneous view of the law." *State v. Harvill*, 169 Wn.2d 254, 259, 234 P.3d 1166 (2010).

"We may affirm the trial court's ruling on any basis supported by the record." *State v. Streepy*, 199 Wn. App. 487, 500, 400 P.3d 339, *review denied*, 189 Wn.2d 1025 (2017).

When determining whether to grant a motion for a new trial, a court cannot consider evidence which inheres in the jury's verdict. *State v. Jackman*, 113 Wn.2d 772, 777-78, 783 P.2d 580 (1989). Such evidence includes "the mental processes by which individual jurors arrived at the verdict, the effect the evidence may have had on the jurors, and the weight particular jurors may have given to particular evidence." *Long v. Brusco Tug & Barge, Inc.*, 185 Wn.2d 127, 131-32, 368 P.3d 478 (2016).

Here, the trial court based its decision on an erroneous legal basis. Because jurors' mental processes and the length of a jury's deliberations both inhere in the jury's verdict, a court's decision in granting or denying a mistrial cannot take either into account. However, it is clear that both types of inadmissible evidence heavily influenced the court's decision here. Therefore, the court's reliance on this type of evidence constituted an abuse of discretion.

However, as discussed previously, we conclude that the prosecutor did not violate the motion in limine. Therefore, because we can affirm the trial court's ruling on any basis supported by the record, we nonetheless affirm the trial court's denial of Birdsall's motion.

10

III.    PROSECUTORIAL MISCONDUCT

Birdsall argues that the prosecutor committed misconduct at various points throughout trial. We disagree.

A.    Legal Principles

"Prosecutorial misconduct may deprive a defendant of his constitutional right to a fair trial." *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 703-04, 286 P.3d 673 (2012). To prevail on a claim of prosecutorial misconduct, a defendant must "show that in the context of the record and all of the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial." *Glasmann*, 175 Wn.2d at 704.

We review the prosecutor's conduct and whether prejudice resulted therefrom "by examining that conduct in the full trial context, including the evidence presented, 'the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury.'" *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (internal quotation marks omitted) (quoting *McKenzie*, 157 Wn.2d at 52).

During closing argument, a prosecutor has "wide latitude in drawing and expressing reasonable inferences from the evidence." *State v. Hoffman*, 116 Wn.2d 51, 94-95, 804 P.2d 577 (1991). But a prosecutor may not argue facts not in evidence or make arguments appealing to a jury's passion that prejudices the defendant. *State v. Belgarde*, 110 Wn.2d 504, 507-08, 755 P.2d 174 (1988); *State v. Boehning*, 127 Wn. App. 511, 519, 111 P.3d 899 (2005).

In a prosecutorial misconduct claim, a defendant who fails to object to improper conduct may be deemed to have waived the issue on appeal unless the prosecutor's statements are so flagrant and ill-intentioned that the resulting prejudice could not be corrected by a jury instruction. *Emery*, 174 Wn.2d at 760-61. The defendant must show that (1) no curative instruction would

have eliminated the prejudicial effect, and (2) the misconduct resulted in prejudice that had a substantial likelihood of affecting the verdict. *Emery*, 174 Wn.2d at 761. The focus of this inquiry is more on whether the resulting prejudice could have been cured, rather than the flagrant or ill-intentioned nature of the remarks. *Emery*, 174 Wn.2d at 761-62.

B.      Drugging of Victim

Birdsall argues that the prosecutor's line of questioning, discussed previously, violated the motion in limine prohibiting drug evidence and constituted prosecutorial misconduct. Because we conclude that the prosecutor did not violate the motion in limine, we disagree.

C.      Gender Double Standard

Birdsall argues that the prosecutor committed misconduct in her closing argument because she encouraged the jury's decision to reflect a referendum on gender equality by arguing that they were "responsible for addressing the culture of double standards for men and women." Br. of Appellant at 33-34. Birdsall concedes that he did not continuously object but argues that the prosecutor's conduct was so flagrant and ill-intentioned that no curative instruction could have erased the prejudice. We disagree.

The prosecutor briefly discussed the double standard between genders. She then discussed how "we don't blame the victim." 5 RP at 974. Based on the context of the argument as a whole, we conclude that the prosecutor's comment was neither improper nor prejudicial. But even if it was improper, Birdsall cannot show how any resulting prejudice could not have been corrected by a jury instruction. Accordingly, his claim fails.

D.      Misrepresented Evidence

Birdsall argues that the prosecutor committed misconduct when she misrepresented evidence in her closing argument. Birdsall contends that the prosecutor erroneously stated that his

expert was inaccurate because he treated SC as a heavy-set woman. We conclude that Birdsall waived this argument.

It appears Birdsall's expert, Predmore, used a higher than average rho factor in his calculations. In Predmore's experience, women with an athletic build have a higher rho factor than the average woman. Because SC had an athletic build, Predmore used a higher rho factor of 0.61. Accordingly, the prosecutor misstated the evidence when she stated that Birdsall's expert used the rho factor of a heavy-set woman. He did the opposite.

However, because Birdsall did not object to the prosecutor's argument, he is deemed to have waived the issue unless he can show that no curative instruction would have eliminated the prejudicial effect and that the misconduct resulted in prejudice which had a substantial likelihood of affecting the verdict.

Birdsall cannot make such a showing. The experts' differences in rho factors led to calculations that differed by 0.003. In fact, whether SC's BAC increased by 0.040, as Predmore stated, or 0.043, as Knoy stated, per alcoholic beverage, was of marginal importance because SC testified about how she felt and how intoxicated she was both leading up to and during the time in which she was raped. Because the prosecutor's error likely did not affect the jury's verdict and in any event could have been cured by an instruction, we conclude that Birdsall waived his argument.

E.     Cumulative Error

Birdsall claims that the multiple instances of prosecutorial misconduct constituted cumulative error, which requires a new trial. Because we conclude that no unwaived prosecutorial misconduct occurred, we reject Birdsall's argument.

13

IV.     INEFFECTIVE ASSISTANCE OF COUNSEL

Birdsall argues that he received ineffective assistance of counsel at various times throughout trial. We disagree.

A.     Legal Principles

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution guarantee the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011).

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on a claim of ineffective assistance of counsel, the defendant must show both (1) that defense counsel's representation was deficient and (2) that the deficient representation prejudiced the defendant. *Grier*, 171 Wn.2d at 32-33. If either prong is not satisfied, the defendant's claim fails. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 673, 101 P.3d 1 (2004). There is a strong presumption that counsel's representation was effective. *State v. Brett*, 126 Wn.2d 136, 198, 892 P.2d 29 (1995).

Representation is deficient if, after considering all the circumstances, the performance falls "'below an objective standard of reasonableness.'" *Grier*, 171 Wn.2d at 33 (quoting *Strickland*, 466 U.S. at 688). "The burden is on a defendant alleging ineffective assistance of counsel to show deficient representation based on the record established in the proceedings below." *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). We do not consider matters outside the trial record. *State v. Linville*, 191 Wn.2d 513, 525, 423 P.3d 842 (2018). Legitimate trial strategy or tactics cannot serve as the basis for a claim of ineffective assistance of counsel. *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009).

To show prejudice, a defendant must establish that "there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different." *Kyllo*, 166 Wn.2d at 862. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

B.      Failing to Object During Closing Argument

Birdsall argues that he received ineffective assistance of counsel based on his counsel's failure to object to the previously discussed instances of prosecutorial misconduct in the prosecutor's closing argument. We disagree.

Birdsall first contends that he received ineffective assistance of counsel when his attorney failed to object to the prosecutor's argument in closing regarding societal double standards and victim blaming. Because we conclude that the argument was not improper, Birdsall cannot demonstrate deficient performance. In addition, as we already discussed, Birdsall also cannot show prejudice.

Birdsall next argues that he received ineffective assistance of counsel when his attorney failed to object to the prosecutor's mischaracterization of his expert's calculations. We also reject this argument because Birdsall cannot show prejudice. As discussed above, the prosecutor did misstate the evidence introduced by Birdsall's expert. However, the experts' slight differences of SC's estimated BAC increase per alcoholic drink, based on differences in rho factors, likely had no effect on the outcome of trial because SC testified about how intoxicated she was on the night of the incident. Thus, whether SC's BAC increased by 0.040 or 0.043 per alcoholic beverage was of relatively little importance. Accordingly, Birdsall has not shown prejudice.

Because Birdsall cannot show prejudice for either instance of alleged misconduct, his ineffective assistance of counsel argument fails.

C.      Failing to Request a Reasonable Belief Jury Instruction

Birdsall argues that he received ineffective assistance of counsel when his attorney failed to request a reasonable belief affirmative defense jury instruction.  We disagree.

"[I]t is a defense which the defendant must prove by a preponderance of the evidence that at the time of the offense the defendant reasonably believed that the victim was not mentally incapacitated and/or physically helpless."  RCW 9A.44.030.

Based on the evidence presented, we note that Birdsall would have been entitled to an instruction based on this statutory defense if his counsel had requested it.  However, to prevail on his ineffective assistance of counsel claim, Birdsall must also show that the failure to request the instruction constituted deficient performance which prejudiced him.

Here, counsel's choice to not request a reasonable belief instruction, and instead argue that the State failed to meet its burden to prove SC was physically helpless or mentally incapacitated, was objectively reasonable.[3]  *See State v. Coristine*, 177 Wn.2d 370, 378-79, 300 P.3d 400 (2013) (recognizing that it can be a valid tactical decision to not assert an affirmative defense because defenses carry with them the burden of proof).  Birdsall has not shown that the record establishes anything to the contrary.  "The burden is on a defendant alleging ineffective assistance of counsel to show deficient representation based on the record established in the proceedings below."  *McFarland*, 127 Wn.2d at 335.

---

[3] *State v. Powell*, 150 Wn. App. 139, 206 P.3d 703 (2009), is distinguishable because there, the failure to request the reasonable belief affirmative defense instruction was not objectively reasonable.

Unlike in *In re Personal Restraint of Hubert*, 138 Wn. App. 924, 158 P.3d 1282 (2007), there is nothing in the record showing Birdsall's counsel's strategic or tactical decisions.[4] *See Linville*, 191 Wn.2d at 525. Because his counsel's strategic or tactical decisions are not presented in the record, Birdsall cannot prevail on his claim of ineffective assistance of counsel at this stage.

D.      Failing to Argue Youth as Mitigating Factor

Birdsall argues that because he was 19 years old on the date of the crime, under *State v. O'Dell*, 183 Wn.2d 680, 358 P.3d 359 (2015), he received ineffective assistance of counsel at sentencing when his attorney failed to argue for an exceptional downward sentence based on his youth. We disagree.

In *O'Dell*, the court reversed a defendant's sentence because the trial court erroneously believed that it could not consider youth as a mitigating factor when the defendant was 18 years old at the time of the crime. 183 Wn.2d at 696-97. Here, however, the court did not believe that it was precluded from using Birdsall's youth to impose an exceptional downward sentence. Therefore, the issue is different than that presented in *O'Dell*.

Instead, the issue here is more analogous to the issue presented in *State v. Hernandez-Hernandez*, 104 Wn. App. 263, 15 P.3d 719 (2001). In *Hernandez-Hernandez*, the court sentenced the defendant to a standard range sentence, and on appeal, the defendant made a similar argument to Birdsall's argument here. Specifically, the defendant argued that his trial counsel was ineffective for failing to request an exceptional downward sentence based on applicable case law. *Hernandez-Hernandez*, 104 Wn. App. at 265-66.

---

[4] In contrast, counsel in *Hubert* stated he did not request a reasonable belief instruction because "he 'was not familiar' with the statutory defense until [the defendant's] appellate counsel brought it to his attention." 138 Wn. App. at 929. The failure to investigate statutory defenses constitutes deficient representation. *Hubert*, 138 Wn. App. at 929-30. Here, there is nothing to show Birdsall's counsel was unaware of the reasonable belief affirmative defense.

The court rejected the argument and concluded that the defendant could not prove the prejudice prong of his ineffective assistance of counsel claim. *Hernandez-Hernandez*, 104 Wn. App. at 266. The court reasoned that, even without his counsel's argument, the trial court had the discretion to impose an exceptional sentence downward. *Hernandez-Hernandez*, 104 Wn. App. at 266. Thus, it was "not convinced the outcome would have been different had defense counsel argued [the relevant case law] to support an exceptional sentence." *Hernandez-Hernandez*, 104 Wn. App. at 266.

The trial court had similar discretion here. *In re Pers. Restraint of Light-Roth*, 191 Wn.2d 328, 336, 422 P.3d 444 (2018) ("[The Sentencing Reform Act of 1981] has always provided the opportunity to raise youth for the purpose of requesting an exceptional sentence downward, and mitigation based on youth is within the trial court's discretion."). Birdsall's counsel argued that he should receive a sentence at the low end of the standard range. And, in rendering its decision, the court specifically acknowledged Birdsall's youth. It nonetheless decided to impose a midrange sentence because it felt Birdsall and Krebs should receive equal sentences.

There is a possibility that the trial court would have given Birdsall a different sentence if his attorney had argued that he should receive an exceptional sentence downward under *O'Dell*. However, "mere possibilities do not establish a prima facie showing of actual and substantial prejudice." *In re Pers. Restraint of Meippen*, 193 Wn.2d. 310, 317, 440 P.3d 978 (2019). Accordingly Birdsall has failed to prove he was prejudiced, and therefore, his ineffective assistance of counsel argument fails.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, P.J

We concur:

Sutton, J.

Glasgow, J.